THE TERRITORY OF KANSAS AGT. WILLIAM S. REYBURN.

*Indictment: Ferry Charter: Forfeiture: Quo-Warranto: Practice in Criminal Cases: Constitutional Law: License Tax.*

1. The provision of the Code of Criminal Procedure (Laws of 1859, p. 198, sec 99) that " In pleading a private statute, or a right derived therefrom, it is sufficient to refer to the statute by its title, and the day of its approval, and the court must take notice thereof," only gives an example, but does not require that it shall always be followed.

2. The question of the forfeiture of a ferry charter, can not be tried on an indictment. It can only be inquired into and determined in a proceeding in the nature of *quo warranto* brought for that purpose.

3. All legal defenses to an indictment for a violation of the territorial laws may be made under the plea of not guilty, and a special plea is not necessary.

4. No material averment in an indictment, which is denied by the defendant, is taken as true, but it must be proved in some manner by the prosecution.

The Territory of Kansas agt. William S. Reyburn.

5. When it is averred in an indictment that the defendant kept a ferry without a license, it is incumbent on the territory to prove that the defendant had no license.

6. An act of the territorial legislature, granting a ferry franchise, is a contract between the legislature and the grantee, which the legislature can neither change, repeal or impair the obligation of.

7. Where a ferry franchise is granted by special act of the legislature, a license from the county tribunal is not required.

8. The legislature may authorize the county tribunals to impose a tax upon all ferries, and require the keepers to pay it when so fixed. This may be enforced, but not by indictment. The tax need not be paid until it is fixed by the county tribunal; and, if the statute does not provide for its collection, the common law does by civil action.

ERROR from the District Court of the First Judicial District in and for Leavenworth County.

*By the Court*—PETTIT, C. J.

The court has well considered this case, and the questions presented by the record thereof; and I now proceed to pronounce our opinion and judgment.

This was an indictment under the 13th section of " An act to regulate ferries," approved February 8th, 1859, which is as follows: " If any person demand or receive pay for services as ferry-man, without a license, he shall forfeit to the county twenty dollars for every day he shall keep such ferry, or be imprisoned not less than ten days, nor more than thirty days, or be punished by both such fine and imprisonment, to be recovered by indictment in the court of the proper county." The indictment has twenty-four counts in it, which are copies of each other, except as to the day on which the offense is alleged, and the first is as follows: " The grand jurors of the territory

of Kansas, impanneled and sworn to inquire within and for the county of Leavenworth, upon their solemn oaths and affirmations, do present, That William S. Reyburn and Isaac G. Losee, late of said county, on the first day of November, in the year of our Lord one thousand eight hundred and fifty-nine, at the county of Leavenworth aforesaid, and within the jurisdiction of this court, did keep and maintain a ferry, and demand and receive pay for services as ferry-man, without a license, then and there procured and had according to law, to keep said ferry and receive pay for services as aforesaid, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the territory of Kansas."

The defendant, Reyburn, asked a separate trial, which was allowed, and thereupon he pleaded : *first*, not guilty ; and, *secondly*, a special plea, as follows : " And for a further plea to said indictment, the same defendant further pleads and makes answer, and says, that he is the assignee and owner of the ferry privilege or franchise granted by the legislature of this territory, in the year 1855, on page 7ᴐ2.   That said law of said territory is to him a sufficient license, warrant and authority to use said franchise at the city of Leavenworth, and collect tolls therefor, without other or further license from the county of Leavenworth or any other authority."   A demurrer was filed to this special plea, and overruled and excepted to.   No reply to this was filed, and the defendant was entitled to a final judgment and discharge on it, and for this rea-

son, if for no other, the judgment must be affirmed. All subsequent proceedings being irregular and void, except the final judgment, might be totally disregarded, but the question being of great interest to the county, it being entitled to the penalty, if any be incurred, and to the defendant, as it involves a large amount, and as there are other indictments pending in the district court sitting in Leavenworth county, from which court this case comes to this court on appeal, we shall decide the whole question on its merits as though a reply denying it had been put in to the special plea. The trial came on, and a verdict of not guilty was rendered by the jury, and judgment accordingly. On the trial the court gave, among others, the following instructions : " That the plaintiff having produced no evidence to show that the defendant, William S. Reyburn, had not taken out a license to keep said ferry, the defendant was entitled to a verdict of acquittal, and that if the jury believe, from the evidence, that the defendant, William S. Reyburn, was the assignee of the original parties named in the defendant's special plea, and in the act of the legislature referred to above, he, the defendant, was, on that ground, entitled to a verdict of acquital." These instructions were excepted to. Record evidence was allowed to show a regular assignment of the ferry privilege from the original grantors to the defendant, and excepted to, and the errors complained of are : 1st. The overruling of the demurrer to the special plea. 2d. The allowing record evidence of the assignment. 3d. The instructions of the court,

that it was incumbent on the territory to produce evidence that the defendant had no license from the county tribunal to keep said ferry.

We will consider these questions in the order above stated : 1st. It is contended that the demurrer to the special plea should have been sustained ; *first*, because it is bad in form, in this, that it does not give the title of the special act set up, or the date of its passage, and to sustain this view, the 99th section, on page 198, of the Laws of 1859, is relied upon, which reads : " In pleading a private statute, or a right derived therefrom, it is sufficient to refer to the statute by its title, and the day of its approval, and the court must take notice thereof." At common law it is conceded that, in pleading such statute, it must have been fully set out, but the object of this section was to obviate and dispense with that perplexity of pleading, but to require definiteness enough to fully advise the opposite party what law was relied upon to secure the right claimed. The section, in our judgment, only gives an example, but does not require that it shall always be followed, and we are strengthened in this view by the fact, that not one of the acts passed at the first session, when the grant of the ferry privilege was enacted, has any day of passage fixed to or on it, and it is, therefore, impossible to give the day on which any of the numerous acts of that session was passed. It would be an unreasonable and unwarrantable construction to the section above quoted from the Acts of 1859, to hold that the legislature thereby intended to say, that, in pleading any private statute,

or any right derived therefrom, passed at the first session of the territorial legislature, the statute should be set out at full length as at the common law practice, knowing, as they did, that it was, and would be, impossible to give the day of the passage of any of the acts of that session. But, if this is a defect in the plea, it can not avail to reverse the judgment here. Section 276, page 226, of the Laws of 1859, on the subject of appeals in criminal cases, provides as follows: "On an appeal the court must give judgment without regard to technical errors or defects, or exceptions which do not affect the substantial rights of the parties." Surely, if this is a defect, it is but a technical one, for it can not be said, when a plea, as in this instance, tells the session at which the law was passed, and referred to the book and page in and on which it may be found among the published laws, that the substantial rights of the adverse party are affected, because the title of the act and day of its passage are not given. The whole spirit of civil and criminal codes of practice, alike, is to disregard technicalities and observe the substance only. It is further contended that the special plea is bad in substance, because it does not aver that the conditions upon which this privilege was granted, had been complied with by giving bond, as required by the fifth section of the grant, and thus showing that his right had not been forfeited. This is a mistaken view. If the question of forfeiture could have been tried in this case and manner, then it was the duty of the plaintiff to have replied the forfeiture by not complying with the con-

ditions; the defendant being in possession, the law will presume that he complied with the conditions upon which he was entitled to such possession. But the question of forfeiture could not be tried in this case or in this way. It could only be inquired into and determined by a special proceeding for that purpose, and the writ of quo warranto should be resorted to for this purpose. See Laws of 1859, page 579. The decisions and common law rules are so numerous and familiar, that it can not be necessary to cite them. The plea was sufficient, and the demurrer was properly overruled, but, if the special plea is bad, and the demurrer had been sustained, then there would have been no error in admitting the evidence which was offered and admitted, under the plea of not guilty. We are of opinion that all legal defenses to an indictment for a violation of the territorial laws, may be given under the plea of not guilty, and that no special plea is necessary.

The *second* alleged error is the allowing record evidence of the deeds of assignment to be given in evidence. In this there was no error. The statute fully authorizes this evidence to be given. The *third* error complained of is, that the court instructed the jury that it was incumbent on the territory to produce evidence that the defendant had no license from the tribunal doing county business, to keep the ferry. It is said that this is requiring a negation to be proved, and 1 Greenleaf on Ev., p. 106, and Wharton's Am. Cr. Law, p. 715, are cited. These authorities do not sustain the position taken. They only go to cases

where the subject-matter of the negative averment is specially in the knowledge of the adverse party. How stands the question of license or no license? If granted, it must have been by a public tribunal, with a clerk and a public record, subject to the inspection of all, and it would have been easy to have put the clerk on the witness stand, and proved by him that he had searched the record, and could find no evidence that such license had ever issued. This would have been *prima facie* evidence of the truth of the averment, and then, had it been necessary, it would have devolved on the defendant to make a more thorough search of the record, or show otherwise that license had, in fact, issued. No material averment in an indictment, which is denied by the defendant, is taken as true, but it must be proved in some manner by the prosecution. There are many cases where negative averments must be proved. The subject-matter of this averment was not peculiarly in the knowledge of the defendant. It was, and must, of necessity, have been as much within the knowledge of the public authorities as of the defendant. It was said, in argument, that the section above quoted, on which the indictment is predicated, applies to all ferries, whether established by legislative grant or by the county board; that the act referred to in the special plea was no license; that it was competent for the legislature to alter its terms, impose further restrictions on the possessors of the ferry by requiring them to take a license from the county tribunals, and making them indictable if they did not, and that it might be re-

pealed entirely, and that the territorial legislature may abrogate or impair the obligation of a contract. We admit that the legislature may tax the franchise of any property created or called into existence by its grant, but further than this, to all and each of these propositions, we put in our unqualified dissent. The act referred to in the plea is a contract between the legislature and the grantee and their assignees, which the legislature can neither change, repeal or impair the obligation of. If it has been forfeited, it is a judicial question which the court alone can determine when a proper case is made for that purpose. It is argued that the provision of the constitution of the United States, prohibiting the states from passing any law impairing the obligation of a contract, does not extend to or include the congress of the United States, and hence, as they are not forbidden, they may pass such laws. This is an extreme error, and grows out of a misunderstanding of the organization and structure of our government, and is predicated upon the erroneous idea that the general government is an original sovereignty. The separate states were original sovereignties, and may have had power, as such, to impair the obligation of contracts, until they formed the constitution, by which they voluntarily prohibited themselves from the exercise of it, the existence of which right will be doubted, and the use of it was always deservedly condemned by all good and just men. The general government is not an original but a derivative sovereignty, upholding such powers only as are granted to it by the constitution, or such

as necessarily arise and follow from those specifically granted. The general government is the delegated agent, with the constitution in its hand as its warrant of attorney, beyond whose provision it can not go in its action. The constitution will be searched in vain to find a special grant of power to impair the obligation of a contract, and who shall justly say that this power, immoral in itself, and abhorrent to every man's sense of natural justice, is a necessary implication arising from the powers granted. We deny it. Congress having no such power, could confer none upon her creature, the territory of Kansas, which derives all her power from the grant of congress. But congress has not attempted such an absurd thing. The organic act extends the constitution of the United States here, if, indeed, it was not here before, and its whole spirit, as well as its letter, is against impairing the obligation and sacredness of contracts. What parts and provisions of the constitution were sent here; were they those sacred parts which protect persons, property and contracts, or those parts which provide for declaring war and the destruction of property, and all civil rights of the enemy, consequent upon that state of things? All jurists will say the former, while the practice in the territory might indicate the latter. But, in our judgment, the territorial legislature has not attempted to change, alter or impair the obligation of this contract; all her legislation is consistent and in harmony with the continued existence of all the granted rights under that act, unimpaired. At the first session of the legislature, held in 1855,

two distinct systems of establishing ferries were in-
augurated, one by special grant, as in this special plea
set up, and the other by general law, allowing the
county tribunals to establish ferries.   See Laws of
1855, p. 362, etc.   This act, and that of 1859, are
one and the same, their provisions are the same, the
same sections, word for word, are in each, and, in
fact, the new is but a reprint of the old, and when the
latter took effect, the former was repealed.   The new
created no new policy, but left it as it had been from
the first session of the legislature.   The section under
which this indictment is found, applies solely and ex-
clusively to such ferries, the granting of license to
which, is provided for by that act.   This is plainly to
be understood by the whole context of the act, and to
enable us to give full effect to both acts, and ration-
ality to the expressed intention of the legislature,
the first section provides that no person shall keep a
ferry without a license, or other legal authority.   The
grant named in the plea was a legislative license and
legal authority.   The second section provides for pe-
titioning the county tribunals, and has this proviso:
" That license shall not be granted to any ferry within
the limits granted to any other ferry, previously, by
legislative enactment."   This proviso clearly intended
to prohibit the county tribunals from granting a license
where the legislature had granted or established one.
There is no positive evidence which of these acts was
passed first, as neither have the date of the approval,
and, unless we can find internal evidence to the con-
trary, we must hold that they took effect at the same

time, as both were passed at the first session. This internal evidence is strong that the special act was granted first from the above proviso, which speaks of ferry grants *previously*, by legislative enactments. Now, as this was the first session of the legislature, previously could not refer to any former session, but must mean a former part of the same session, and as this is the only legislative grant of a ferry legally before us, we must presume that this is the special one referred to in this proviso. There is a clear prohibition upon the county tribunal to issue a license to a ferry at this place. This, it must be remembered, is one indictment for not taking out a license. It is a solecism to say that a man can be indicted and suffer a penalty for not doing that which the law forbids him to do or to be done. The third section provides for issuing a license for one year. The grant claimed by the defendant extends for twenty years, and is a license for that period. The fifth section provides for giving a bond. The special act requires the same thing. Why require two bonds to secure the performance of the same duty? The sixth section authorizes the county tribunals to fix the rate of tolls. The special act fixes these rates itself, and this is a part of a contract that can not be impaired. It is clear to us that the legislature have never intended to require those holding grants from them, to take also a license from their inferior, the county tribunals, and make themselves indictable for not doing so. The twenty-third section of the general act authorizing the county tribunals to impose a tax upon all ferries, and require

the keepers to pay it, when fixed by the tribunals, this can be done and enforced, but not by indictment, a conviction upon which may result an imprisonment. This tax need not be paid till it is fixed by the tribunal; and, if the statute does not provide for its collection, the common law does by civil action. There is no loss for authorities on this point.

ORDER.—The said judgment of the district court is, in all things, affirmed; that a special mandate issue to carry it into effect, and final judgment here for costs in this court; and it is ordered that this opinion be spread at length on the order book of this court.