THE STATE OF KANSÁS V. HORACE L. WILSON.

No. 11,964. (64 Pac. 23.)

1. EMPIRICISM—*Insufficient Defense*. It is no defense to a prosecution under chapter 68 of the Laws of 1870 (Gen. Stat. 1897, ch. 100, §§ 392, 393; Gen. Stat. 1899, §§ 2302, 2303) to prove that a person charged with unlawfully practicing medicine in violation of its provisions has been, since the passage of such act, continuously engaged in the practice of medicine for a period of ten years or more in another state.

2. ——— *What Defendant Must Prove*. In such case it devolves upon the defendant to produce evidence tending to show that he has attended two full courses of instruction and graduated in some medical college in this or some foreign country, or to produce a certificate of qualifications from some state or county medical society, as such evidence is not accessible to the state, and is peculiarly within defendant's knowledge and under his control.

3. CRIMINAL PROCEDURE—*Erroneous Instruction*. In a criminal case an instruction which is tantamount to a direction to return a verdict of guilty against the defendant is erroneous.

Appeal from Ellis district court; LEE MONROE, judge. Opinion filed March 9, 1901. *In banc*. Reversed.

STATEMENT.

THIS case was here last year upon questions reserved by the state upon an order of the district court sustaining a motion to quash the information. At that time, the information being held to be sufficient, the judgment of the court below was reversed, and the case remanded for further proceedings. (*The State v. Wilson*, 61 Kan. 791, 60 Pac. 1054.) After the mandate from this court was filed in the court below, the county attorney amended the information by adding two additional counts thereto, and afterward, and in the month of September following, a trial was had to a jury, which found the defendant guilty on three counts. A motion for a new trial was overruled by

the court and excepted to by the defendant, and he brings the case here for review, assigning numerous errors, which, so far as they are regarded as important, are stated in the opinion.

*A. A. Godard*, attorney-general, *James T. Nolan*, and *A. D. Gilkeson*, for The State.

*D. Rathbone*, for appellant.

The opinion of the court was delivered by

ELLIS, J. : The defendant was prosecuted in the court below under chapter 68 of the Laws of 1870 (Gen. Stat. 1897, ch. 100, §§ 392, 393 ; Gen. Stat. 1899, §§ 2302, 2303), entitled "An act to protect the people from empiricism, and to elevate the standing of the medical profession." Section 1 of that act contains a proviso in the following words :

"Provided, that in all cases when any person has been continuously engaged in the practice of medicine for a period of ten years or more, he shall be considered to have complied with the provisions of this act."

In this case it was the contention of the defendant that he had been practicing medicine in Nebraska for more than ten years last past, but he did not pretend that in this state or another he had ever practiced medicine prior to seventeen years ago. Upon the trial, he offered to read in evidence the depositions of two witnesses to prove that he had practiced medicine in Nebraska for ten years prior to 1894. An objection on the part of the state to the evidence thus offered was sustained by the court. The defendant excepted, and the ruling of the court in that behalf is assigned as error.

"A person of good moral character, who had practiced medicine continuously for ten years or more

1. Previous practice—insufficient defense.

The State v. Wilson.

before the taking effect of the act, is deemed to be qualified and to have complied with the provisions, but continuous practice for ten years in violation of law, after the act was passed, confers no right or authority on the practitioner." (*The State v. Wilson,* supra.)

Counsel for the defendant insists that the above quotation from the syllabus of the case, while correct as an abstract statement of the law, is not applicable to the defendant, under the facts sought to be proved in his behalf as above set forth, because his client, having practiced without the state of Kansas during the period of ten years, cannot be said to be one who has been engaged "for ten years in violation of law." In the absence of proof to the contrary, it will be presumed that the laws of Nebraska are the same as our own.   Besides, it is known of all men that throughout the civilized world schools, colleges, dispensaries, hospitals and institutions for clinical instruction are maintained at public and private expense for the education of those men and women to whom is committed the responsible duty of ministering to the health and endeavoring to prolong the life of human beings.   All, or nearly all of these institutions, issue certificates or diplomas reciting the term and course of study which has been pursued by the student therein.   Those colleges whose curriculum includes a complete course of those studies which are regarded as requisite for a physician and surgeon to pursue do uniformly issue to one who has completed such course, and exhibited proficiency therein, a diploma reciting such facts, and evidencing that by reason thereof the graduate has been made a doctor of medicine.

In the case at bar the defendant does not claim to have attended any of these schools of special learning,

nor does he claim that he had devoted any time to the study of any of the branches of this learned profession, nor does he avow that in Kansas, or elsewhere, he ever submitted to an examination before a board of competent members of the profession which he seeks to follow. Coming to Kansas for the first time, he, in effect, announces that it does not matter that he has not availed himself of the means of special education which were afforded him; it is enough that he has practiced medicine in Nebraska for more than ten years, and during that time has successfully evaded the laws of that state or eluded its officers, and now he asks that a preference be given him over men in this state who have been heretofore subject to our laws. We can see no reason for holding that the statute under which this prosecution is conducted is not applicable to this defendant. We think that, by the terms of the statute, the defendant's case does not fall within the proviso above quoted, and certainly the purpose of the statute would not be carried out and the evident intent of the legislature would not be given effect by such a decision. It follows that there was no error committed by the court below in striking out the parts of the depositions to which reference has been made.

Complaint is made that the court below erroneously placed the burden of proof upon the defendant. The statute provides:

"It shall be unlawful for any person . . . who has not attended two full courses of instruction and 2. Burden of proof on defendant. graduated in some respectable school of medicine, either of the United States or of some foreign country, or who cannot produce a certificate of qualification from some state or county medical society, . . . to practice medicine in any of its departments for reward or compensation."

Upon the trial, the prosecution offered evidence tending to prove that, agreeably to the rules adopted by the state board of health pursuant to section 5 of chapter 75, General Statutes of 1897 (Gen. Stat. 1899, § 6377), the qualified practicing physicians and surgeons of each county in the state were required to. register, and that the defendant was not, at the time the information in this case was filed against him, nor at the time of the trial, registered in accordance with such regulations, although he was shown to have had actual knowledge of their existence. The state then offered testimony tending to prove that the defendant, while not so registered, had practiced medicine for pay in said Ellis county, and rested. Thereupon, the defendant requested the court to instruct the jury to bring in a verdict for the defendant, which request was refused, and thereafter the court instructed the jury as follows :

"The statutes of Kansas require that, before any person can legally practice medicine for compensation in this state, he must have attended two full courses of instruction and graduated in some respectable school of medicine, either of the United States or of some foreign country, or be able to produce a certificate of his qualification from some state or county medical society. The burden of introducing some evidence tending to prove such qualification is on the defendant."

Exceptions were taken to the refusal of the court to instruct the jury to return a verdict of acquittal, and to the foregoing instruction given by the court to the jury. As to the refusal of the court to instruct the jury to return a verdict of not guilty, it may be assumed that such an instruction is justifiable where there is an entire failure of evidence on the part of the state to prove the guilt of the defendant; still we

40—62 KAN.

do not think the court erred in refusing such instruction. The state had offered evidence tending to prove that the defendant was engaged in following for a livelihood the profession of physician and surgeon. Presumably he would be anxious to have it appear to the people of the community in which he resided that he was well qualified to perform the duties and fulfil the requirements of that profession. Without such belief on the part of the people his practice would be greatly restricted. He and they were bound to know that the laws of this state prescribed certain conditions upon compliance with which he could engage in that business, and he, at least, is shown to have known that registration as physician and surgeon was required by the regulations of the state board of health. Under these circumstances, the state having offered the evidence above cited, the defendant owed it to himself to produce, if he had it, evidence tending to show his qualification to practice. We think that the foregoing evidence offered by the state, coupled with the presumption that the defendant would speak and offer evidence, if any he had, in his own behalf, when his interests so strongly required him so to do, constituted a case sufficient for the consideration of the jury, and evidence sufficient to sustain a verdict, if one had been returned against the defendant. (*State v. McDuffie*, 107 N. C. 885, 12 S. E. 83.)

A more important question is presented by the instruction of the court, which substantially changes the burden of proof in this class of cases. It is scarcely necessary to announce that ordinarily the burden of proving the guilt of the defendant and every essential ingredient thereof, beyond a reasonable doubt, is upon the state, and the accused stands on the presumption of his innocence until a complete case is made against

him ; and if the testimony is insufficient on any material point he must be acquitted. "These rules are merely stated. Neither the public nor the profession is interested in the discussion of questions long settled, well understood, and generally acquiesced in." The court undoubtedly regarded this case as exceptional in its nature. The authorities are not free from conflict, but the weight thereof appears to preponderate in favor of the position taken by the trial court in this case. The reason for the rule sought to be laid down by those courts which hold that the state need not assume the burden of proving such negatives as must be averred under the statute above quoted is found in its necessity. We have not been able to find a definition which seems altogether satisfactory and may not be able to give one. The following rule is quoted with approval by many courts in criminal as well as in civil cases :

"Where the means of proving the negative are not within the power of the party alleging it, but all the proof on the subject is within the control of the opposite party, who, if the negative is not true, can disprove it at once, then the law presumes the truth of the negative averment from the fact that such opposite party withholds or does not produce the proof that is within his hands, if it exists, that the negative is not true." (5 A. & E. Encycl. of L., 2d ed., 42, n. 1.)

Without giving unqualified assent to that rule, we remark that a failure of justice would usually result if the state were required to prove, in a case like the present, that the defendant had not attended two full courses of instruction and graduated at some respectable medical college in this or some foreign country, or that he could not produce a certificate from some state or county medical society ; for where a person had determined to engage in the unlawful practice of medi-

cine he would naturally seek a location among strangers, and would refrain from imparting facts in relation to his past history, which the prosecution would be unable to trace, although he might be an empiric and ignoramus as well. Where the state denies the right to its citizens generally to engage in a particular trade or profession, and grants such right to those of its citizens only who have acquired a certain degree of proficiency therein, and prescribes certain documentary proof as requisite to show that a particular citizen has such right, but does not require such proof to become a matter of record in any public office in the county where such person engages in such trade or profession, upon the trial of a case wherein it is alleged by the state, in substance, that a person against whom the information is filed has not complied with the laws of the state, and is following such trade or profession in violation thereof, is unqualified therefor, and has not and cannot produce such evidence as he is required to possess of his qualifications before he can engage therein, we think that, because of the impracticability, if not the utter impossibility, of the state's being able to prove such negative averment, and because, also, the defendant can readily produce the required evidence, as well as because his interests would prompt him to do so, and in order that justice may be done, the defendant should be required to produce such evidence. Doctor Bishop lays down this rule :

"One of the leading presumptions in our law is, that what is common in general belongs also to the particular ; this is a *prima facie* presumption, and the party who would resist its force must show that, in the particular instance, the fact is otherwise." (Bish. Stat. Cr. § 1051.)

The State v. Wilson.

Commenting on this rule, the learned author says :

"From this it follows, that if the law forbids the mass of the community to sell intoxicating liquor, but grants license to some particular individuals to sell it, then, if some one person is indicted for making an unlicensed sale, the presumption that what is common in general belongs likewise to the particular stands as *prima facie* proof, and the defendant, if he has a license, must show it.  This conclusion of legal reasoning is aided by the further consideration that, since the averment is a mere negative one, and, if it is not true, the defendant has in his own possession the evidence to show the truth, the orderly and convenient administration of justice is promoted, while no harm is done to the individual by casting the burden on him."   (Bish. Stat. Cr. § 1051.)

Cases for the sale of liquor and drugs and medicines and the operation of ferries and the like, without license, present features which are analogous to the case under consideration, and in most of the states the courts have held that it is not necessary for the prosecution to prove that the defendant had no license.   Different reasons are assigned for the establishment of this exceptional rule.   In several states a labored effort is made to prove that the rule is not exceptional in its nature, but that it accords with the ordinary procedure in criminal cases.   An attempt to reconcile the reasons thus given would be fruitless.   Indeed, most of these cases extend the rule much beyond the point we regard as justifiable.   For instance, in this state liquor is not allowed to be sold except upon a druggist's permit, which is granted in the county where the business is to be transacted, and the fact of issuing the permit is made a matter of public record in the office of the probate judge, which is held at the county-seat where the court meets and generally in the same building where it convenes.   Now, the rea-

son for making an exception in this class of cases, it being that to require the state to prove that the defendant did not have a license, or certificate, or permit, would often be in effect to require the state to perform an impossibility, can have no application to a case where competent evidence in regard to the fact is as accessible to the state as it is to the defendant. In the absence of a statutory regulation relieving the state from the duty of proving that one charged with the unlawful sale of intoxicating liquor did not have a permit therefor, because the reason for the rule fails in such a case, the rule itself ought to fail and the state, having access to admissible evidence, ought to be required to produce it. This is in accord with earlier decisions of this court. (*The State v. Schweiter*, 27 Kan. 499; *The State v. Nye*, 32 id. 201, 4 Pac. 134.)

In other words, where evidence to prove the negative averment is not peculiarly within the knowledge of the defendant, but is also within the knowledge and control of, or, upon reasonable effort and by the exercise of proper diligence, may be secured by, the state, then the prosecution is bound to produce such evidence, and, failing to do so, the defendant ought to be acquitted. Applying this distinction to the case at bar, it will be readily seen that it might well be beyond the power of the state to prove any of the negatives alleged in the information in this case. The facts and the evidence in relation thereto are, and of necessity must be, peculiarly within the knowledge and under the control of the defendant, while, as above remarked, his desire to stand well with his patrons and with the community generally would naturally prompt him to submit evidence to remove the cloud cast upon his professional reputation by such an inquiry; and, therefore, to require him to

The State v. Wilson.

produce such evidence would result in no injury, but in a positive benefit to him.

For these reasons there was no error in the charge of the trial court that the defendant was required to produce *some* evidence tending to show his qualifications. (Bish. Stat. Cr. §§ 1051, 1052, 1053, and cases cited; *Wheat v. The State*, 6 Mo. 455; *People v. Nyce*, 34 Hun [N. Y.] 298; 5 A. & E. Encycl. of L., 2d ed., 42, *supra*, and cases cited; Under. Crim. Ev. § 24, and cases cited; Black, Intox. Liq. § 507, and cases cited; *The State v. Crow*, 53 Kan. 663, 37 Pac. 170.)

As this case must be reversed for reasons hereinafter appearing, and a new trial ordered, it may not be improper to remark that if the defendant should show that he had attended two full courses of instruction and graduated in some medical college of this or some foreign country, then, in the absence of some evidence raising a question about it, the presumption would be that such college was respectable. To avoid misunderstanding, however, with reference to the facts of this particular case, we think the court would have been justified, for reasons appearing on the face of the documents themselves, in excluding from the jury the paper which counsel for the defense calls a diploma, issued by the so-called Independent Medical College of Chicago, and the other paper purporting to have been issued by a physio-medical society in Illinois (which latter was excluded), because neither of these papers proves, nor tends to prove, that the defendant had attended any course of instruction in either institution, or had graduated at either, and because neither of them can be regarded as a diploma, nor as such certificate as is contemplated by our statute.

After the jury had been out of court for several hours in considering their verdict, they returned and re-

quested further instructions, and thereupon, the court, in response to that request, gave the following :

"I say to you that under the law and the evidence, for the purposes of this case, the defendant was not at the time charged in the information legally qualified to practice medicine for compensation in this state, and, if he did so practice medicine at the times and places and for the persons alleged in the information, it is your duty to convict him, and to consume no time speculating on the question of whether he might have

3. Erroneous instruction. been qualified to practice medicine under the statute, because, I again say to you, that, so far as the evidence in this case discloses, he was not so qualified, and it is your duty to find that any practicing that he may have done for sick persons for compensation as alleged in the information was done illegally, and you should convict him therefor by your verdict."

This was tantamount to an instruction to find the defendant guilty, and, if not in words, certainly in effect, nullified the original instructions of the court relating to reasonable doubt. The general rule that all the instructions given by the court to the jury in a particular case are to be considered together can have no application here, for by this instruction the court directly settled for the jury the only question about which any doubt could have remained in their minds, and pointedly directed them that, if they believed the evidence, as to which there was no controversy, upon the question as to whether the defendant had practiced medicine for compensation, they must find the defendant guilty, and that speedily. Thus the court disposed of every presumption in the defendant's favor and indirectly withdrew from the jury's consideration certain evidence which had been previously admitted. We do not believe that an instruction to find the defendant guilty is justifiable in

any criminal case. As said by this court in the case of *The State v. Smith*, 13 Kan. 298 :

"Ordinarily, a jury might well draw such an inference from such facts ; but the court below says that, in effect, they are compelled to draw such an inference, and this, in our opinion, is an unauthorized assumption by the court of a duty that belonged exclusively to the jury. From the proven facts, the jury, not the court, must find that the accused converted the money to his own use. In this case they might well have found him guilty from the facts proven, if they had been left at liberty to weigh the value of these facts, as well as any others necessary to prove the guilt of the accused.''

It may not be absolutely certain that this instruction did mislead the jury, but we cannot be positive that it did not do so, and, as a majority of this court regard it as clearly erroneous, a reversal of the judgment must be ordered and the case remanded for a new trial.

JOHNSTON, J. (dissenting) : I concur in the judgment of reversal and in all the points decided except the one which places the *onus probandi* upon the defendant. This decision marks a radical departure from the well-established rule of criminal procedure in Kansas. From *The Territory of Kansas agt. William S. Reyburn*, McCahon, 134, and *Carl Horne v. The State of Kansas*, 1 Kan. 47, through every volume of our reports up to the present case, the burden of proof has been held to be upon the prosecution. The accused has been presumed to be innocent of the offense charged, and it has been uniformly ruled that he could stand on this presumption and withhold all proof until the prosecution had made out a complete case against him. The statute in plain language requires

the application of this rule where it provides that "a defendant is presumed to be innocent until the contrary is proved." (Crim. Code, § 228 ; Gen. Stat. 1897, ch. 102, § 236 ; Gen. Stat. 1899, § 5481.) This statutory rule, which has been enforced for a third of a century, is now set aside because it is inconvenient and difficult for the state to prove an offense against one charged with empiricism. Instead of a presumption of innocence in favor of a practitioner of medicine, a mere charge against him raises a presumption of guilt, and he is required to show his innocence before testimony of his guilt is produced. The principal element of the offense is that the defendant practiced medicine without authority or right. Under the rule which has heretofore obtained, the state is required to prove by some testimony, however slight, that an offense has been committed, and that it was committed by the accused. When that is done, and the defendant claims an excuse or justification for his act, it devolves on him to meet the proof of the state by producing evidence of the facts on which he relies to excuse or justify his conduct, but until a *prima facie* case of guilt is made out he can sit still and rest on the statutory and legal presumption of innocence.

It is true that there are cases which hold that, as to substantive matters of exemption or immunity, the burden is on the defendant ; but even in those cases he is not called on to prove anything, and the burden is never shifted to him until all the elements of the offense charged have been proved by the state. Where the presumption of innocence is a matter of statute, it cannot be taken away or the burden of proof shifted to the defendant, except by a change of the statute itself. In the matter of the sale of intoxicating liquors, the burden was held to be on the state to prove

the negative averment that the party had no authority to sell, and to change the rule an act of the legislature was deemed to be necessary. ( *Territory v. Reyburn*, supra ; *The State v. Kuhuke*, 26 Kan. 405 ; *The State v. Schweiter*, 27 id. 499 ; *The State v. Nye*, 32 id. 201, 4 Pac. 134.)   In 1885 the legislature, by express provision, relieved the state from the inconvenience and difficulty of proving a number of negative averments in prosecutions for the unlawful sale of liquor, and as to these matters placed the burden upon the defendant, but it occurred to no one that the court could have set aside the presumption of innocence provided by the criminal code, or have enacted a rule shifting the burden of proof from the state and upon the accused. When the statute against empiricism was enacted, the court had repeatedly ruled that every material averment of a charge, whether affirmative or negative, must be proved by the state, and that the defendant could not be called on for proof until the prosecution had by its evidence established his guilt.   If the legislature had intended to except cases prosecuted under this act from the general rule, it would have made an exception in the act itself, as was done in prosecutions for the sale of intoxicating liquors.   The legislature, as well as the courts, has proceeded upon the theory that a person charged with selling intoxicating liquors without a license or permit was entitled to the presumption of innocence, and that the burden of showing license or authority could only be placed upon him by statutory enactment.   And is such person entitled to greater consideration and protection than one who is charged with unlawfully practicing medicine?

In my view, if a change of the law as to the burden of proof is necessary, it should be accomplished by the legislature instead of by the court.   Under

our criminal code the presumption of innocence attaches to the defendant, whatever may be the offense and however difficult and inconvenient it may be for the state to show his guilt, and this presumption can only be taken away and the *onus probandi* placed on the defendant by a modification of the law itself. The difficulty of making proof in cases like this is greatly overestimated, I think, as it is a general rule that only slight proof is required to sustain negative averments, and in most instances a *prima facie* case could be made out by the state from statements of the defendant to the state board of health and other officers, as well as from his conduct; but if the difficulties are as great as anticipated, the remedy is with the legislature.