No. 26,441.

THE STATE OF KANSAS, *Appellee*, v. A. H. NOSSAMAN, *Appellant*.

SYLLABUS BY THE COURT.

1. ABORTION—*Criminal Liability—Exculpating Exceptions—Burden of Proof.*
   In a prosecution on a charge of manslaughter committed by producing an abortion as defined in R. S. 21-437, where the accused relies on the exculpating exception of that section, to the effect that he procured an abortion because it was necessary to preserve the life of the woman or had been advised by a physician to be necessary for that purpose, it devolves on the accused to prove that he comes within the exception.

2. CRIMINAL LAW—*Instructions—Circumstantial Evidence.* The failure to give the usual instruction as to circumstantial evidence is not prejudicial error where the evidence of that character received, was corroborative of ample direct evidence establishing the commission of the offense charged.

3. WITNESSES—*Impeachment of Credibility—Accused as Witness.* The defendant was a witness and testified in his own behalf on the main issue in the case, and upon the cross-examination was asked questions not connected with the offense charged relating to his past life and character and of specific acts committed by him of an immoral and degrading character. Such an examination was permissible in order to test his veracity and credibility, and it is found not to have been so unduly extended and conducted as to constitute an abuse of discretion by the trial court.

Appeal from Butler district court; GEORGE J. BENSON, judge. Opinion filed February 2, 1926. Affirmed.

*S. A. Buckland, H. W. Hart* and *Glenn Porter,* all of Wichita, for the appellant.

Abortion, 1 C. J. pp. 316 n. 82, 324 n. 94, 330 n. 62; 1 R. C. L. 77. Criminal Law, 16 C. J. p. 1009 n. 6; 17 C. J. p. 246 n. 73. Witnesses, 40 Cyc. p. 2558 n. 63; 20 L. R. A. 616; 28 R. C. L. 620.

*Charles B. Griffith,* attorney-general, *R. E. Boynton,* assistant attorney-general, *R. T. McCluggage,* county attorney, and *Stanley Taylor,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: A. H. Nossaman, who was charged with having performed an abortion upon one Hazel Roblin, which resulted in her death, was convicted of manslaughter in the first degree, and from the judgment he appeals.

As a result of relations with one Lyle Jacobs, Hazel Roblin became pregnant. The parents consulted the defendant, not surmising pregnancy, and she was given medicine for the purpose of inducing menstruation. About a week later they consulted him again, and defendant told them that he believed her to be pregnant and advised them to have an operation that would accomplish an abortion. He stated that cases of that kind came up every day in the best of families, had been so cared for, and that it could be easily done. That he had treated a case the previous week and that the girl was not off her feet twenty-four hours. Hazel Roblin was taken to his office a few days later when the defendant after an examination declared that she was pregnant, and it was suggested that there might be a marriage between her and Lyle Jacobs, but he was told that Jacobs had refused to marry Hazel. The doctor said then an operation is the only way out of it. The mother suggested perhaps the case was too far advanced for producing a miscarriage, but the defendant, after inquiring about the length of time that had intervened since conception, said that the case was not too far gone for a miscarriage. The defendant discussed with the father of Hazel the obtaining of money from Jacobs, and the defendant said he would charge Jacobs $250 for the operation, as it was an awful responsibility to put it over; $1,500 was paid by Jacobs to Hazel, and on September 16 Hazel was taken to the defendant's office where the first steps towards an abortion were taken by the insertion of a catheter, which remained for a day, and was removed on the direction of the defendant. On September 18 the doctor visited the Roblin home and used instruments for the removal of the fetus. On the following morning the fetus passed, and about nine o'clock on that day the girl died. An examination was made of the fetus and doctors testified that it disclosed that there had been pregnancy for the period of about four months. Defendant signed a death certificate ascribing the cause of Hazel's death to appendicitis with

double pneumonia and other complications, and further stated that no operation had preceded death. An examination of the uterus showed that it had been punctured from the inside and witnesses testified that death might have resulted from the puncturing of the uterus or from infection, or from a combination of both. The jury found the defendant to be guilty of manslaughter in the first degree and judgment was accordingly entered.

Complaint is made that the evidence is insufficient in that the state failed to show that the operation performed was not necessary to preserve the life of Hazel, and further that it was not advised by a physician to be necessary for that purpose. The prosecution was based on the statute providing that:

"The killing of a human being without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration or attempt to perpetrate any crime or misdemeanor, not amounting to a felony, in cases when such killing would be murder at the common law, shall be deemed manslaughter in the first degree." (R. S. 21-407.)

And another provision that:

"Every physician or other person who shall willfully administer to any pregnant woman any medicine, drug, or substance whatsoever, or shall use or employ any instrument or means whatsoever, with intent thereby to procure abortion or the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by a physician to be necessary for that purpose, shall upon conviction be adjudged guilty of a misdemeanor," etc. (R. S. 21-437.)

It is argued that it devolved upon the state to show not only that the defendant produced the abortion, but was required to negative the exception in the statute that it was not done in good faith to preserve the life of the woman or had not been advised by physicians to be necessary to save her life. There is a divergence of authority as to whether the burden is upon the state to negative the exception or whether it is a matter of affirmative defense to be shown by the accused. That the burden is on the state to negative the exception and show that it was not necessary to save life, or that the accused had not been advised by a physician that the operation was necessary for that purpose, has been upheld in the following cases: *State v. Shoemaker,* 157 Ia. 176; *State v. Goodson,* 299 Mo. 321, and other Missouri cases therein cited. The other view is that the exception relates to facts peculiarly within the knowledge and under the control of the defendant, which would be dif-

ficult if not impossible for the state to prove, and that the burden of proving the advice and necessity is a matter of defense to be shown by the accused, and finds support in the following authorities: *Johnson v. People,* 33 Colo. 224; *Hatchard v. The State,* 79 Wis. 357; *People v. McGonegal,* 17 N. Y. Supp. 147, affirmed in 136 N. Y. 62; *Bradford v. The People,* 20 Hun. 309. See, also, *State of Nevada v. Ah Chew,* 16 Nev. 50; *Territory v. Burns,* 6 Mont. 72; *Jenkins v. The State,* 36 Tex. 638; 1 C. J. 316.

In this state exceptions of the kind involved here have been treated as matters of defense to be brought forward by the accused. In *State v. Wilson,* 62 Kan. 621, 64 Pac. 23, the defendant was charged with practicing medicine without complying with "An act to protect the people from empiricism," which contained an exception or proviso that, "In all cases when any person has been continuously engaged in the practice of medicine for a period of ten years or more, he shall be considered to have complied with the provisions of this act." (p. 622.)

In the instructions the court placed the burden on the accused to prove the exception, and it was held that:

"It devolves upon the defendant to produce evidence tending to show that he has attended two full courses of instruction and graduated in some medical college in this or some foreign country, or to produce a certificate of qualifications from some state or county medical society, as such evidence is not accessible to the state, and is peculiarly within defendant's knowledge and under his control." (Syl. ¶ 2.)

In *State v. Perello,* 102 Kan. 695, 171 Pac. 630, the defendant was charged with a violation of the bone dry law making it unlawful for any person to have, keep or use intoxicating liquors, "except druggists or registered pharmacists as hereinafter provided." It was held with one dissent that the exception was not a material part of the description of the offense, that the negative averment was not necessary to a valid information, and that it was not difficult for the defendant to prove that he was a druggist or registered pharmacist and within the exception, if such was the fact. To the same effect see, also, *State v. McCloria,* 111 Kan. 379, 207 Pac. 645. It was conceded that defendant produced the abortion, and whether he honestly determined it was necessary to save the life of the girl or had been advised by a physician that it was necessary for that purpose, was a character of proof not easily obtained by the state, but was peculiarly within the knowledge and control of the accused, and if acting in good faith he should have been very willing and ready to

bring it forward. The logic of our former decisions is that it did not devolve on the state to prove the exception, and if relied on by the defendant it was necessary for him to prove that he came within the exception.

However, the evidence of the state showed clearly that the operation was not performed to save the life of the girl, nor on the advice of another physician. His own statements and admissions, most of which were not denied, showed that it was procured to hide the pregnancy and prevent exposure and disgrace, and another prominent consideration was that he might obtain a large fee. The girl was in a healthy condition, and the defendant encouraged her and her parents to think that a vitalized embryo could be removed with safety, and that she would only be sick for two or three hours, and could go báck to school the next Monday. He entered into a conference relating to obtaining money from the putative father, out of which he expected his fee to be paid. He advised that such operations were common, came up every day, and that about a week before he performed a like operation upon a girl who was not off of her feet twenty-four hours, and that it was an easy matter to get by with such things. After arranging for the operation, he objected to taking her to a hospital, and instead of seeking the advice of a physician as to the necessity of it, he sought to keep the matter secret, as disclosed by the following letter written by him to the father of the girl:

"Bill, be careful, now, what you say and do and if there is to be anything done come up tomorrow P. M. Tues. & I am going to charge that bunch $250 for its an awful responsibility to put it over. It can be done but it's a job. So if you can get $1,250 I think you better do it Bill. You will have $1,000 left. You see you have no right to compromise a criminal charge & hence you all better keep it on the Q. T. & stay from the Lawyers & all you did not show up this A. M. Mon. & I want to only put you on your guard. They might get a black mail on you & don't put your name to any papers whatsoever Bill come Tues. P. M."

The fee asked by him was $250, but he finally agreed to accept $200, $100 of which was paid before the operation was performed. There was nothing in his statements when urging that the girl submit to an operation, no hint even, that it was necessary to preserve life or health, but on the other hand assured them that she would be up and about in twenty-four hours. The death certificate already stated was wholly inconsistent with honesty and good faith in the matter wherein he falsely certified that no operation had been per-

formed and that death was due to other causes. In his testimony
he admitted that the operation was performed, and that the false
statements included in the certificate were made for the protection
of the family. Even if the burden of negativing the exceptions was
held to rest on the state, his statements and admissions as developed
in the evidence were amply sufficient to show that the operation was
not done in the belief that it was necessary to save the life of the
girl or done under the advice of a physician for that purpose.

Complaint is made of the refusal of the court to give an instruc-
tion on circumstantial evidence. Some evidence of that kind was
introduced, and while the court did not give the elaborate instruc-
tion requested, it did charge the jury that:

"The intent with which an act is done may be proved by direct and positive
testimony, or the intent may be inferred from all the facts and circumstances
surrounding and attending the act as shown by the evidence in the case; and
the intent in this case must be determined from the evidence, and every man
is presumed to intend the natural and probable consequences of his own act."

The court correctly instructed the jury at length as to the elements
which constituted the offense, and it was incumbent on the state to
prove these beyond a reasonable doubt. Most of the evidence was
direct and of itself of the most convincing character. Little circum-
stantial evidence was introduced, and that which was received
tended to corroborate the direct evidence given. In such a case the
refusal to give the stock instruction on circumstantial evidence can-
not be regarded as material error. In *State v. Link,* 87 Kan. 738,
125 Pac. 70, it was said:

"Instructions on the subject of circumstantial evidence were asked and re-
fused. The case was not one, however, calling for such instructions. The state
produced direct and positive testimony regarding the defendant's conduct,
which was amply sufficient to warrant a verdict of guilty, and the incriminating
circumstances surrounding the transaction which were given in evidence were
merely corroborative." (See, also, *State v. Gereke,* 74 Kan. 196, 86 Pac. 160 and
87 Pac. 759; *State v. Shives,* 100 Kan. 588, 165 Pac. 272.)

Other criticisms have been made of the instructions, but we find
no error in any of them.

Complaint is made of the cross-examination of the defendant,
wherein he was asked and required to testify as to prior arrests and
of improper relations and conduct with women. His attention was
called to letters written by him which tended to show his relation-
ship with women and misconduct of a grave character. He admitted
writing the letters, and their contents strongly tended to discredit

his evidence. While the wrongful and illegal acts revealed by the letters about which he was questioned had no connection with the offense charged in the information, the evidence brought out did go to his character and credibility as a witness. Having become a witness in his own behalf, and in an attempt to justify the abortion he had given his version of the affair. When he took the stand as a witness and gave material testimony, the adverse party had a right to test his veracity and credibility by cross-examination as other witnesses may be tested. In making such a test it was competent to ask as to specific acts not connected with the offense charged if they were such as tended to impair his veracity and credibility.

The extent to which such an examination may be carried is largely within the discretion of the trial court, and it cannot be held that it was so conducted or so extended as to constitute an abuse of that discretion. (*State v. Pfefferle*, 36 Kan. 90, 12 Pac. 406; *State v. Bowers*, 108 Kan. 161, 194 Pac. 650; *State v. Waldron*, 118 Kan. 641, 236 Pac. 855.)

We find no material error in the record, and therefore the judgment is affirmed.