## STATE OF MINNESOTA *vs.* WILLIAM ROSE.

### July 28, 1891.

**Criminal Trial—Case for Jury.**—Where, in a criminal action, all the particular facts and circumstances tending to criminate the accused, and relied on by the state to connect the accused with the perpetration of the offence charged, are supported by evidence proper for the consideration of the jury, the value and importance of which depends upon the credibility of the witnesses, the case is necessarily one for the jury.

**Same—Charge of Court—Review of Evidence.**—Under the statutes of this state, it is not improper for the court in its charge to review and analyze the evidence. It is not error for the court to state to the jury that certain evidence is material, or that it tends to prove certain facts, or to comment upon the testimony, when it is done fairly, and the jury are fully advised of their duty and responsibility in the premises.

**Trial for Murder—Evidence of Threats by Defendant—Rebuttal—Evidence of Conduct or Character of Deceased.**—Where, upon an indictment for murder, evidence of threats and the exhibition of malice by the accused against the deceased is introduced on behalf of the state, the defendant may contradict or explain such evidence, but may not, in extenuation or justification, introduce independent evidence of instances of personal immorality on the part of the deceased, or his general bad character.

**Same—Evidence Sufficient.**—Evidence considered, and *held* sufficient to justify the verdict.

Defendant was tried and convicted in the district court for Redwood county, before *Webber*, J., on an indictment for murder in the first degree. He appeals from the judgment, and from an order refusing a new trial.

*Erwin & Wellington* and *F. S. Brown*, for appellant.

*Moses E. Clapp*, Attorney General, *H. W. Childs*, and *M. M. Madigan*, for the State.

VANDERBURGH, J. The defendant was convicted of the crime of murder in the first degree in the district court for the county of Redwood. The case is brought here upon appeal from an order refusing

a new trial. It seems to have been carefully and impartially tried, and was submitted to the jury upon a full and exhaustive examination and inquiry into the facts; and the questions involved were reconsidered by the trial court on the motion for a new trial. Among the errors assigned by defendant's counsel and chiefly relied on here, is that the verdict of the jury is not justified by the evidence. We have given the case due consideration, after a perusal of the evidence of all the witnesses and an examination of the entire record in this court, and are fully satisfied that this objection cannot be sustained, and that there are no substantial errors disclosed by the record which would justify the interference of this court.

The deceased, Moses Lufkin, an elderly man, was assassinated in the town of Gales, in the county of Redwood, at the house of his relative, the witness Slover, who was well acquainted with defendant, at about 8 o'clock in the evening of the 22d day of August, 1888. He was at the time seated on a lounge against the north window of the room, conversing with Slover. The window was uncovered, except with mosquito netting over the lower half, and the lower sash was raised. His left shoulder rested against the window casing, leaving a portion of his back exposed to view from the outside. While so engaged, he was suddenly shot, and immediately expired. The shot must have been fired from the outside, and the direction of the weapon adjusted by the assassin with reference to the height of the window above the ground, and within a few feet of it. The ball passed through the body of the deceased, and pieces of it were picked up afterwards in the room. Slover, who sat nine feet away, immediately "jumped" to the window, looked out, and testifies that he saw a person fleeing in an opposite direction, about 30 feet away, whom he recognized to be the defendant, William Rose, who was well known to him, though he did not have a view of his face. Witnesses testify that it was a bright, moonlight night, and objects could be seen for a considerable distance. The ground rises gradually on that side of the house for several rods, and then descends towards the river, and beyond the rise of land is a row of willows extending east and west, towards which the person in question was seen running. The issue of the guilt of the defendant necessarily involved the question whether he was there at

the time of the homicide, and the accuracy of Slover's identification of him as the person whom he saw fleeing from the window a moment after the shot was fired, and this naturally became the chief subject of the investigation before the jury. And the question is not whether, if the case had rested solely upon the testimony of Slover or any other witness, the court ought to allow the verdict to stand, but whether upon the facts, as the jury should derive them from all the testimony, their conclusion is found to be justified. The record is voluminous, and contains a large amount of testimony offered in support of and in opposition to the theory of the state on the subject of defendant's presence at the time and place of the homicide; but it is evident that the discovery of the truth about that matter must depend, not merely upon the relevancy and importance of the inculpatory or exculpatory facts and circumstances disclosed by the evidence, but also upon the credibility and weight of the testimony, which was peculiarly for the jury.

The defendant lived about 15 miles, in a southerly direction, from Slover's place, and is admitted to have left home, on a pony owned by him, at about 2 o'clock P. M. that day. Several witnesses testify that they recognized him and the horse. Others, testify to having seen a man riding a similar horse on that afternoon in the direction of Slover's, and dressed in clothing resembling that usually worn by him, and which he is shown to have had on the same day, before he left home. The evidence of all these witnesses was pertinent, and of some of them direct and positive. The witness Minnie Goltz, for example, testifies that she saw him pass that afternoon. She was only about 20 or 30 steps away, and recognized him. He had his hat in his hand. She had seen him often before, the last time within a week. He was riding his "buckskin pony." She observed him particularly. On the day after the homicide, tracks of a man, apparently running from the house, were discovered and examined; and further search discovered a place, in an obscure ravine about a mile away, where an unshod horse had recently been stationed. The description of the freshly-made tracks corresponded to those made by the feet of the defendant's pony; that is to say, there were certain marks of identity dis-

closed by measurement, and peculiarities in the shape of the hoofs. At this place also were found the tracks of a man closely resembling those made in the garden near the house. These tracks were carefully measured and located, and shoes taken from the feet of the defendant were applied thereto, and, according to the testimony, found closely to correspond. Maps and diagrams showing the premises where the homicide was committed, and the roads and places where the prosecution claims he was recognized, were used by the witnesses in explaining their testimony to the jury. The evidence was therefore much more clearly presented to the trial court than it can be made to appear by the record on appeal. The hired man testified that when the defendant left home that afternoon he said he "guessed he would go to town." His own testimony, however, in support of an *alibi*, is that he went to his uncle's, and remained there till 8 o'clock in the evening, when he returned home. In this he is supported by the testimony of members of his uncle's and his own family. But, apart from some intrinsic difficulties in the matter of the *alibi*, it is clearly irreconcilable with other testimony in the case, and particularly with that of witnesses who are positive of their identification of him on the afternoon of that day, and also with the condition of his horse, which in the morning exhibited evidence of very hard driving and exhaustion; and the evidence of the state in rebuttal tended to show that the defendant had not learned of the removal of his uncle to his new place of residence till the day after the homicide. The evidence in his behalf tended also to show that the pony was shod. This is contradicted by the testimony of other witnesses, including evidence of his own declaration that the pony was not shod within the time when it is claimed to have worn shoes, and evidence that he had pared its hoofs at a time when he swore it was shod.

The defendant and Lufkin had been at enmity for many years. There had been personal difficulties between them, out of which litigation had grown, and there is evidence that the defendant on several occasions had threatened that he would shoot Lufkin, one of which was within a week of the homicide. It is not practicable to review the evidence *in extenso*, nor would it subserve any useful purpose to attempt to do so. It is sufficient to say that all the essential particulars re-

lied on by the state to connect the defendant with the perpetration of the offence are supported by evidence proper for the consideration of the jury, but whose value necessarily depended upon the credibility of the witnesses, of which the jury alone could judge.

The evidence of instances of personal immorality on the part of Lufkin, and his general bad character for immorality in the community, was properly rejected by the court. The evidence would raise collateral issues calculated to prejudice the case before the jury, and divert their attention from the real nature of the issue on trial, and was unnecessary to a determination of the question whether defendant was actuated by malice or personal ill will. He was entitled to contradict or explain the evidence of the state in this behalf, and to show the facts in respect to character and extent of his alleged illwill, and so far he was allowed to go in the introduction of testimony.

The witness Webb was allowed to testify in respect to peculiarities in the hoof of one of the hind feet of the pony, which he found on an examination thereof made by him several months after the homicide. But the objection by defendant in respect to lapse of time went rather to the weight than the competency of the evidence. The evidence tended to show some correspondence between the hoof and the tracks examined by him in the ravine.

The defendant's counsel objects to some of the instructions given to the jury in the court's charge, as tending to influence the decision on the facts of the case. The court referred to the evidence of the state as an "attempt to prove a succession of such facts and circumstances, connected with and surrounding the commission of the crime charged, as tends to show that the defendant is the guilty party;" and added: "If these facts and circumstances are proved to your satisfaction, and are sufficient to satisfy your minds, beyond a reasonable doubt, that the defendant is guilty of the crime charged, then he may be convicted upon such circumstantial evidence." There was certainly no error here. The first part is merely descriptive of the character of the evidence of the prosecution, and the purpose of it, without assuming to pass upon its weight or sufficiency. Since, however, the court is to judge of the competency and materiality of evidence, it is not improper for it

to state that certain evidence is pertinent to the issue, or that it tends to establish the affirmative or negative thereof.

In respect to the defendant's attempt to prove an *alibi*, the court instructed the jury as follows: "The defendant testifies that his business in going to his uncle's on the afternoon of the homicide was to deliver him a box of revolver cartridges which he had purchased for him, [and you will naturally consider, with all the other evidence, whether it was reasonable and probable that the defendant would have left his employment, and rode some twelve miles, I think he testifies, for so trivial a matter as to deliver him a box of cartridges, which are not shown to have been needed or wanted at that time by his uncle.] The truth and weight of this evidence, and of all the evidence, both on the part of the state and the defendant, should be carefully tested by your own general knowledge, derived from experience." So much of this language as is included within the brackets was specially objected to by the defendant on the ground that it is error for the court to comment upon the testimony in a criminal case. It is only necessary to read the language objected to in connection with that which follows, to show that it was entirely unobjectionable, and that the subject was left wholly and impartially to the judgment of the jury. But, under the statute, it is not error for the court to refer to or comment upon the testimony, when it is done fairly, and no erroneous or misleading statements are made or inferences drawn, and the jury are fully advised in respect to their duty in the premises. On the contrary, an intelligent analysis and review of the testimony, as circumstances may require, by the presiding judge, is eminently proper to aid the jury in their investigation of the truth, while their independence and responsibility, subject to the law given them, are in no way interfered with. An examination of the charge of the judge in this case will show that the court was not liable to criticism for the manner in which it discharged this duty, and the court took pains to instruct the jury that they were the exclusive judges of the facts and of the credibility of all the witnesses.

The court also instructed the jury, at considerable length, upon the subject of the nature of circumstantial evidence, and the rules

applicable to its consideration by the jury. The defendant excepts to the entire charge on that subject, without stopping to point out objectionable passages. We doubt if any part of these instructions as given are liable to criticism; certainly the principal portion of them was not. The exception is not available. But, in any event, the defendant can hardly complain, since the charge on this subject was supplemented by giving in full the defendant's requests on the same subject, which was all that was necessary to make the charge complete on that branch of the case. The court also instructed the jury, at defendant's request, in respect to his defence of an *alibi*, that, to entitle him to an acquittal, it is sufficient if the evidence on that matter raises a reasonable doubt of his presence at the time and place of the commission of the crime charged. The legal rights of the defendant were fully protected in the instructions given, and we think, as before intimated, that the case presents no errors for which this court would be justified in ordering a retrial.

Order and judgment affirmed, and case remanded for further proceedings.