STATE, RESPONDENT, *v.* KOCH, APPELLANT.

(No. 2,214.)

(Submitted January 13, 1906. Decided February 19, 1906.)

*Criminal Law — Manslaughter — Instructions — Constitution — Jury Trial.*

Criminal Law—Instructions—Jury Trial—Constitution.

1.   Where defendant in a prosecution for murder pleads "not guilty," an instruction to the jury to the effect that they could find him guilty of murder in either of its degrees, or of voluntary or involuntary manslaughter, but "you cannot find him not guilty," is in contravention of defendant's constitutional right (Constitution, Article III, section 16) to have the question of his guilt or innocence determined by a jury, of which right he cannot be deprived no matter how clear and unimpeached or free from suspicion the evidence may be.

Same—Jury Trial.

2.   *Obiter:* The constitutional guaranty that in all criminal prosecutions the accused shall have the right to a trial by jury (Constitution, Article III, section 16) includes misdemeanors as well as felonies.

Same—Trial—What Constitutes.

3.   The word "trial" as used in section 16, article III, of the Constitution, embraces all proceedings in the progress of a criminal prosecution after the issues are made up, down to and including the rendition of the verdict.

*Appeal from District Court, Fergus County; E. K. Cheadle, Judge.*

HARRY KOCH was convicted of voluntary manslaughter. He appeals from the judgment and an order denying him a new trial. Reversed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

By the instruction complained of (No. 29), the court, in effect, advised the jury to find the defendant guilty of murder in the first degree, murder in the .second degree, voluntary .manslaughter or involuntary manslaughter.

The evidence on the part of the state clearly established the commission of the offense charged, and the defendant in his

testimony admits all the facts established by the state but denies that he intended to commit the homicide. The only question of fact in dispute was the criminal intent, but the jury found the defendant guilty of an offense which does not involve intent; hence as to the offense named in the verdict, there was no dispute whatsoever, and the admissions of defendant in his testimony are in effect a plea of guilty as to such offense, and the jury could not ignore this evidence on the part of the state and the admissions of defendant, nor refuse to convict thereon without a palpable violation of its sworn duty. It was not error for the court to call the attention of the jury to its sworn duty. The court did not direct a verdict of guilty as to any specific offense or degree, but in effect advised the jury that on the evidence in the case admitted by the defendant, it was its duty to convict of homicide in some degree, regarding manslaughter as a degree of homicide, leaving the jury to determine the degree. (See *People* v. *Neumann,* 85 Mich. 98, 48 N. W. 290; *People* v. *Collison,* 85 Mich. 105, 48 N. W. 292.)

Had the defendant or anyone else testified or given it as his opinion that he did not fire the shot, or that he did not kill the deceased, or that he did not do any one of the material things necessary to constitute homicide, said instruction 29 would in that case be error. But we submit that under the peculiar facts of this case, said instruction 29 was not error, and that the judgment should, therefore, be affirmed.

*Messrs. Huntoon, Worden & Smith,* for Appellant.

Instruction 29 is inconsistent with various other instructions given, and cannot be reconciled with them; it is passing upon the evidence and the weight of evidence; it is in effect directing a verdict against the defendant, leaving only the degree of crime to be passed upon by the jury, thus depriving the defendant of his constitutional right and of his rights under the Codes of the state of Montana to have a jury pass upon the facts of the case for which he is being tried; and it is in itself erro-

neous as usurping the powers of the jury to find the facts in all criminal cases.

Instructions which are misleading, inconsistent and irreconcilable with others given in the case are presumed to have worked prejudicial error in the trial of the case and to have worked injury to the defendant. (*State* v. *Shadwell,* 26 Mont. 52, 66 Pac. 508; *State* v. *Sloan,* 22 Mont. 305, 56 Pac. 364; *State* v. *Rolla,* 21 Mont. 582, 55 Pac. 523; 2 Thompson on Trials, sec. 2326, and cases cited.)

The court has no power to direct a verdict of guilty where the defendant has entered a plea of not guilty, no matter how clear and unimpeached the evidence may be. (2 Thompson on Trials, sec. 2149, and cases cited.) An erroneous instruction is presumed to have worked injury to the defendant. (*State* v. *Johnson,* 26 Mont. 9, 66 Pac. 290; *State* v. *Mason,* 24 Mont. 346, 61 Pac. 861.) Any expression of the court's opinion upon the evidence as expressed in instructions or fairly inferable from them, upon the weight of evidence is prejudicial error from which a new trial will be granted. (*People* v. *Matthai,* 35 Cal. 442, 67 Pac. 694; *State* v. *Fisher,* 23 Mont. 555, 59 Pac. 919; *Edgar* v. *State,* 43 Ala. 312; *Foster* v. *State,* 47 Ala. 643; 2 Thompson on Trials, sec. 2420.) All issues of facts in criminal cases must be tried by a jury. (Pen. Code, secs. 1991, 2105.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was by information charged with the crime of murder. Upon his plea of not guilty he was tried and found guilty of voluntary manslaughter and sentenced to a term of ten years in the state prison. He has appealed from the judgment and an order denying him a new trial.

The circumstances attending the homicide are the following: On February 15, 1904, the date of the homicide, the defendant and three others were engaged in a game of cards in a saloon owned and conducted by one Joseph D. Vander, in the

village of Stanford, Fergus county. The play had begun early
in the morning and had continued until about 2 o'clock in the
afternoon. A "treat" went with each game. During the day,
beginning before breakfast, the defendant had been drinking,
and at the time of the killing was somewhat intoxicated. A short
time before 2 o'clock Vander and one Louis Seguin began play-
ing the same game at another table near by, Vander sitting
just back of the defendant with his face in the opposite direc-
tion. Other persons were present, to the number of perhaps a
dozen, looking on. Presently Vander turned in his chair, called
the attention of the defendant to the hand he (Vander) held
and asked him whether it was good for four points. After look-
ing at it the defendant said it was. Vander bantered him to
play it against Seguin. The defendant finally bet $20 with
Seguin that he could make four points with it, and took and
played it against Seguin's hand, but lost. Seguin took the
money. Immediately thereafter there was considerable talk
among those present as to the value of the hand, and whether
it was possible, if played against one who understood the game
and holding Seguin's hand, to make four points with it. It
was in fact a trick hand dealt to catch and fleece the unwary.
Having learned that he had been defrauded of his money, de-
fendant became angry. He accused Vander of taking part in
the fraud, and finally became so affected by his feelings that he
wept. Some of the state's witnesses testify that he repeatedly
threatened to get even with or kill some of those who had robbed
him. However, after the lapse of "some minutes" he left the
saloon, went across the street to his hotel, obtained his rifle and
came back, pumping a cartridge into the chamber as he ap-
proached the saloon. Upon entering he saw no one there, the
proprietor and the others who had been present having left
because they anticipated trouble. The saloon proper consisted
of one large room in front, with the bar at the left near the
front door. At the rear were two other rooms in a lean-to, built
of logs, into which access was obtained by doors leading from
the saloon. One room was used for a coalshed, the other for a

bedroom. Two of the persons present had gone into the bedroom; two others, Vander and one Geer, had gone into the coalshed. The doors of both of these rooms were closed. The others who had been present, except one Leroy and one Simpson, had gone to another saloon about fifty feet down the street. Of the latter, Leroy was standing on the sidewalk in front of the building, and Simpson was inside near the bar; whether he was concealed behind the bar the evidence does not show. Upon entering and finding no one in the room, the defendant partially raised the rifle and fired it through the door into the coalshed, almost instantly killing Vander, who happened to be in range beyond the door. There is some evidence tending to show that the instant before the shot was fired Vander opened the door of the coalshed slightly and looked to see what the defendant was doing. After the shot was fired the defendant started to go out, but, observing a bottle on the bar, struck it with his rifle, breaking it and saying that it was the cause of his trouble. He thereupon went to the other saloon where, after firing his rifle again, he was overpowered and arrested. He says that he was then informed for the first time, upon inquiry for the reason of his arrest, that he had killed Vander.

The defendant was sworn as a witness. He denied making any threats against Vander, or that he threatened to kill anyone. He denied, also, that he knew that Vander or anyone else was in the coalshed at the time he fired the rifle into it, and also that he entertained any ill-will toward Vander. He stated that his purpose in getting the rifle was to "bluff" the man who got his money, and that, though he had been drinking during the day, he was perfectly conscious of what he was doing. In other respects the story of the tragedy as told by him agreed throughout with the detailed statements of the state's witnesses. There was evidence that the previous character of the defendant for peace was good.

Upon these facts the court, among other instructions, submitted to the jury the following: "Under the charge contained in this information you may find the defendant guilty of mur-

der in the first degree, murder in the second degree, or you may find him guilty of voluntary manslaughter or of involuntary manslaughter, but you cannot find him not guilty.'' While other errors are assigned upon the instructions, they are based upon alleged conflicts and inconsistencies arising out of the giving of the foregoing instruction; and for present purposes it will not be necessary to notice them.

The question submitted is, whether or not the paragraph quoted is erroneous, in that it explicitly tells the jury that they cannot, upon the facts detailed by the evidence, acquit the defendant, or, in other words, that they must at any rate find the defendant guilty of involuntary manslaughter.

Contention is made by counsel for defendant that no matter what may be the condition of the evidence, the court may not, in a criminal case, where the defendant has entered a plea of not guilty, direct a verdict. The effect of the instruction, it is said, leaves no option to the jury to find the defendant not guilty of involuntary manslaughter, and to this extent invades the province of the jury by directing a verdict. It is said by the attorney general that it is the province of the court to declare the law and of the jury to find the facts, and that, such being the case, it must follow that whenever, in a criminal prosecution, the facts are admitted or not disputed, and it appears therefrom that the defendant is guilty, the court may direct the jury to render a verdict accordingly, since there is nothing for decision but a question of law; otherwise it must follow that in criminal cases the jury are the judges of both law and facts.

Assuming that the facts set forth above show conclusively that the defendant was guilty of involuntary manslaughter, upon the theory that at the time the shot was fired he was engaged in the commission of an unlawful act, to-wit, disturbing the peace (Penal Code, section 753), does it follow that the court could properly assume that, as a matter of law, he was guilty of involuntary manslaughter? The Constitution declares (Article III, section 16): ''In all criminal prosecutions the ac-

cused shall have the right to  *  *  *  a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed,  *  *  *  ." "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." (Id., sec. 29.) The guaranty contained in this provision is general in its terms and of universal application, including misdemeanors as well as felonies, and unless there is some exception by express provision found elsewhere, or some principle of construction by which an exception may be made, it must be construed to mean exactly what it says, and it must follow that the question of guilt or innocence of the defendant must be submitted to, and determined by, the jury, however clear and unimpeached or free from suspicion the evidence may •be. There is no exception expressly provided for anywhere in the Constitution, such as that in clear cases wherein the facts are admitted or undisputed, the court may direct a verdict of guilty.

It is true that in section 23 of the same Article it is provided that in prosecutions for misdemeanors the jury in a justice's court shall consist of not more than six persons, and that the right to a trial by jury may be waived in the justice's or district court by default of appearance or by consent in such manner as may be prescribed by law; but even in such cases the right to a trial by such a jury as is provided for therein is guaranteed by section 16, and cannot be taken away.

It is of little importance what significance may be attached to the word "trial" as used in other connections. Manifestly, it is here used in its broadest and most comprehensive sense, and includes all proceedings in the progress of the case after the issues are made up, down to and including the rendition of the verdict. (*State* v. *Spotted Hawk,* 22 Mont. 33, 55 Pac. 1026.) If this is the correct conclusion as to the meaning of this term, the functions of the court or judge are fully discharged when the case is correctly submitted to the jury and they are left to determine the rights of the defendant. This must be the correct meaning of the term, else we must read into

the section an exception to this effect: "Provided, that in all cases in which the undisputed facts establish the guilt of the defendant, the court may direct the jury to return a verdict of guilty or take the case from the jury and pronounce judgment." In either case the result would be the same, for, whether the court or judge should direct the jury to return a verdict, or take the case from the jury and enter judgment, the determination is made by the court and not the jury.

From these considerations alone it seems to us that in the case at bar the district court clearly invaded the province of the jury. If it be said that this conclusion involves the further conclusion that in all criminal cases the jury are the judges of the law as well as the facts, the only reply proper and possible is that it is this court's province to construe the Constitution as it is, and not by construction to insert in it provisions which the people through their representatives thought it proper to omit.

We are aware that the legislature has declared (Penal Code, section 2105) that upon the trial for any other offense than libel, questions of law are to be decided by the court and questions of fact by the jury, and that, although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are, nevertheless, bound to receive as law what is laid down as such by the court; and that this court has held in the case of *State* v. *Welch*, 22 Mont. 92. 55 Pac. 927, that where there is a total absence of proof it is the duty of the court to direct a verdict of not guilty. It has nevertheless always been recognized in practice in this jurisdiction, that the jury has power to disregard the law as declared and acquit the defendant, however convincing the evidence may be, and that the court or judge has no power to punish them for such conduct.

The supreme court of Pennsylvania, in the case of *Kane* v. *Commonwealth*, 89 Pa. St. 522, 33 Am. Rep. 787, in discussing the question as to whether the jury are the judges of both the law and facts, has well said: "The distinction between

power and right, whatever may be its value in ethics, in law is very shadowy and unsubstantial. He who has legal power to do anything has the legal right. No court should give a binding instruction to a jury which they are powerless to enforce by granting a new trial if it should be disregarded. They may present to them the obvious considerations which should induce them to receive and follow their instruction, but beyond this they have no right to go. The argument in favor of their taking the law from the court is addressed very properly *ad verevundiam.*"

After all, it is of little moment what the theory of courts or the legislatures may be as to the duty of the jury under their oaths. It is well known that in practice they have the power to determine for themselves whether the law as declared by the court is applicable to the facts, and if they acquit the defendant through a mistaken notion that it is not applicable, or out of a total disregard of it, the case is ended for all time; for, under another constitutional guaranty, that no person shall be twice put in jeopardy for the same offense, the court may not set aside the verdict and grant a new trial in such a case.

Nor is it at all to the point that the statute (Penal Code, section 2096) authorizes the court to advise a verdict of acquittal when in its opinion the evidence does not warrant a conviction, or that the court should, when there is a failure of proof, direct such a verdict. (*State* v. *Welch, supra.*) The converse of this is not the law, as we have seen.

Nor do we know of any respectable authority in which the position here assumed by the attorney general has been upheld in a felony case. In Michigan it has been held that where the defendant is charged with a misdemeanor for the violation of a penal statute, and there is no question of intent, and the evidence permits no inferences about which reasonable men might differ, the trial judge may with perfect propriety state to the jury that the law, applied to the facts which are undisputed, shows the defendant to be guilty of the offense charged, and that it is their duty under the law to so find. (*People* v. *Neuman,* 85

Mich. 98, 48 N. W. 290; *State* v. *Ackerman,* 80 Mich. 588, 45 N. W. 367.)

In Pennsylvania it is the rule that the jury are the judges of both the law and the facts, and that it is error for the court to peremptorily instruct the jury in such a way as to take from them the right of deciding the degree of murder. (*Shaffner* v. *Commonwealth,* 72 Pa. St. 60, 13 Am. Rep. 649.) It was held in the same state, in *Kane* v. *Commonwealth, supra,* that the same rule applies to a prosecution for a misdemeanor for violation of a statute prohibiting the sale of intoxicating liquor on election day.

In the case of *State* v. *Maine,* 27 Conn. 281, it was held that the defendant may not waive his right to trial by jury under the guaranty of the Constitution, and permit the court to try the question of his guilt or innocence without the intervention of a jury.

So it was held in Alabama in the case of *Huffman* v. *State,* 29 Ala. 40, that a peremptory instruction to a jury to find the defendant guilty is erroneous, because, although the evidence against the prisoner was undisputed, yet its credibility was a question exclusively for the jury. The same rule was declared in the case of *Nonemaker* v. *State,* 34 Ala. 211.

Likewise, the supreme court of Georgia, in the case of *Tucker* v. *State,* 57 Ga. 503, held that notwithstanding the overwhelming evidence of guilt, it was error for the court to charge that the jury should render a verdict of guilty.

In *State* v. *Picker,* 64 Mo. App. 126, it was declared that a peremptory instruction to find the defendant guilty was a grievous error.

In *Breen* v. *People,* 4 Park. Crim. Rep. (N. Y.) 380, the court charged the jury that if they found the statements of certain witnesses to be true, it established the larceny by the prisoner. This was held to be error.

So in *Howell* v. *People,* 5 Hun, 620, the defendant was charged with a violation of the excise law. The court stated to the jury that the evidence against him was uncontradicted and undis-

puted, and directed a verdict of guilty. The supreme court said, in reversing the judgment: "The right to a trial by jury means that the persons indicted are entitled to have the question of their guilt passed upon by the jury. It does not mean that the court is to decide that question and the jury are only to utter the verdict of the court."

The law is so declared by the supreme courts of Kansas and North Carolina, and by the federal courts. (*State* v. *Wilson*, 62 Kan. 621, 64 Pac. 23, 52 L. R. A. 679; *State* v. *Winchester*, 113 N. C. 641, 18 S. E. 657; *State* v. *Riley*, 113 N. C. 648, 18 S. E. 168; *United States* v. *Taylor*, 3 McCrary, 500, 11 Fed. 470; *United States* v. *Fenwick*, 5 Cranch C. C. 562, 25 Fed. Cas. 15,087.) In *State* v. *Riley, supra,* the court said: "The plea of not guilty disputes the credibility of the evidence, even when uncontradicted, since there is the presumption of innocence, which can only be overcome by the verdict of the jury. The farthest the court can go in a criminal action is to charge the jury that if they believe the evidence the defendant is guilty."

The text of Thompson on Trials lays down the rule thus: "Under constitutional provisions existing, it is assumed, in all states which guarantee to persons accused of crime the right of trial by jury, an accused person has, in every case where he has pleaded not guilty, the absolute right to have the question of guilty or not guilty submitted to the jury, no matter what the state of the evidence may be. Such is the nature of the right thus granted, that it has been frequently held that it cannot be waived by the prisoner, and that the trial of a criminal case before the court without a jury is erroneous, even where it takes place with the prisoner's consent." (Sec. 2149.)

As we have pointed out, a jury may be waived in this state in a misdemeanor case, under the express provision of the constitution, but, with this exception, we think the great weight of reason and authority supports the view that the court may not in any case upon a plea of not guilty coerce the jury by a mandatory instruction to return a verdict of guilty.

While the jury should take the law as laid down by the court and be governed by it, except in libel cases, wherein they are the judges of the law and fact (Constitution, Article III, section 10; *Paxton* v. *Woodward,* 31 Mont. 195, 78 Pac. 215), the person accused may not be deprived of his absolute right to have the question of his guilt or innocence not only of the particular crime charged, but of any included therein, determined by the jury without coercion by the court.

It follows that the judgment and order of the district court must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.

| 33  501|
|f34  257|

(Submitted January 13, 1906.   Decided February 19, 1906.)