## STATE v. FRED T. PRICE.[1]

December 22, 1916.

Nos. 19,951—(10).

**Homicide — conviction sustained by evidence.**

1. The evidence is sufficient to sustain the verdict of guilty.

**Criminal law — what constitutes an accomplice.**

2. The instruction of the trial court in defining an accomplice was not prejudicial. To make a witness an accomplice, it must appear that a crime has been committed, that the person on trial committed the crime, either as principal or as accessory, and that the witness co-operated with, aided or assisted the person on trial in the commission of that crime either as principal or accessory.

**Refusal of request to charge.**

3. The request to charge that the witness Etchison was, as a matter of law, an accomplice was correctly refused.

**Charge to jury.**

4. The charge of the court as to the facts which must be proven before

[1]Reported in 160 N. W. 677.

the jury could find that Etchison was an accomplice was, in view of the circumstances, without error.

**Case followed.**

5. This case is within the doctrine of State v. Nelson, 91 Minn. 143, that "new trials in criminal cases should be granted only where the substantial rights of the accused have been so violated as to make it reasonably clear that a fair trial was not had."

**Evidence of medical experts.**

6. The cause of decedent's death, how the wound was inflicted, whether it was caused by the fall or by a blow, were proper questions for expert testimony. The court did not abuse its discretion in allowing the doctors who were present at the autopsy to testify to these facts.

**Cross-examination by prosecutor.**

7. It was not error for the court to allow the prosecuting attorney searchingly to cross-examine the defendant as to the circumstances of an assault, which defendant on his direct examination had testified that he had been convicted of, even though such inquiry prejudiced defendant.

**Same.**

8. On cross-examining the defendant, the state's attorney touched upon matters concerning defendant's past life. The prosecuting attorney's conduct, although not commendable, did not deprive defendant of a fair trial.

**Defendant given a fair trial.**

9. Neither the address of the prosecuting attorney to the jury, nor the charge of the court relative to the weight to be given by the jury to the remarks of the respective counsel, prevented defendant from having a fair trial.

Defendant and Charles D. Etchison were indicted by the grand jury for the crime of murder in the first degree. Defendant demanded a separate trial, which was granted, and he was tried in the district court for Hennepin county before Fish, J., and a jury which found him guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Charles F. Kelly* and *L. O. Rue,* for appellant.

*Lyndon A. Smith,* Attorney General, *John M. Rees,* County Attorney, and *George W. Armstrong,* Assistant County Attorney, for respondent.

SCHALLER, J.

Defendant and Charles D. Etchison were indicted by the grand jury

of Hennepin county for murder in the first degree for the killing of the
wife of defendant, Mary Fridley Price. Price's separate trial resulted
in a verdict of guilty of the crime charged. He appeals from an order
denying his motion for a new trial.

There is evidence in the record sufficient to warrant the jury in find-
ing the following facts: Mary Fridley Price died on November 28, 1914,
from a wound received by her on that day. The cause of death was a
crushing of the left side of the skull, from which injury she died within
a short time after it was inflicted.

On the day mentioned, at about 6 o'clock p. m. Mrs. Price, her
husband Fred T. Price, and Charles D. Etchison were driving towards
St. Paul along the river drive in Minneapolis on the east bank of the
Mississippi river. The motor car which they occupied was stopped at the
side of the road near the top of the bluff which forms the river bank at
that place. Defendant and Etchison got out, ostensibly to examine the
motor. Mrs. Price also got out of the car and in some way fell over the
bluff, falling a distance of more than 35 feet. She was found by
defendant and Etchison lying near the river not far from the bottom
of the bluff. When found she was still living. The injury from which
she died was not the result of her fall from the cliff, but of the independ-
ent act of either defendant or Etchison, or both. There were no other
marks or bruises or any indications of injury found on her person. A
post-mortem, made a year afterwards, negatived any injury other than
the one to the skull, which was crushed and broken over an area $5\frac{1}{4}$
inches by 4 inches, the longest diameter being from a point above the
left eye backwards, the shortest being from a point near the left ear
upwards. The skull, which is in evidence, is broken clear across the
top, and there is a large triangular fracture on the right side. Within
the roughly oval space on the left side of the skull the bone is fractured
into 12 pieces, large and small. This condition is due to external
force, from a blow with a blunt instrument of approximately the size
of the injury.

When Mrs. Price was found, Etchison immediately went back to the
top of the bluff and in a short time returned, accompanied by several
other men who assisted in carrying her up to the road. An ambulance

having arrived, she was taken to a hospital. She was dead when the ambulance arrived at the hospital.

Defendant gave a version of the "accident" shortly after her death. He stated that he was driving his car and when they got to this place the engine was "missing." He stopped, and while he and Etchison were looking for the trouble, Mrs. Price got out of the car to exercise a little dog belonging to her. Shortly afterwards he heard her call. Not seeing her, he and Etchison went down to the bottom of the bluff, where they found her. He sent Etchison to get help, while he himself remained with her. He repeated this statement several days afterwards.

Before the ambulance arrived, Etchison got into defendant's car and drove off to Fridley to get Mrs. Price's sister, Mrs. Dye. The sister had been notified by telephone and she and her husband were on their way when they met Etchison, who brought them to the hospital, whither defendant had accompanied his wife. After some time spent at the hospital, defendant returned to Fridley with Mr. and Mrs. Dye and Etchison, coming back to Minneapolis about midnight.

Many facts were developed tending to show motives for the commission of this crime by Price. Mrs. Price had no children. She owned property exceeding $20,000 in value. About $10,000 in railroad bonds had been given to her by her father the day before her death. She had considerable money on deposit in two banks. Defendant was her sole heir at law. He tried to get some of the money from the banks for his personal use a few days after Mrs. Price's funeral and before he was appointed administrator of her estate. On December 8, 1914, he succeeded in getting $500. After he was appointed administrator he gave Etchison sums of money aggregating several thousand dollars. He also gave Etchison a note for $7,000.

He had been leading a double life. He was infatuated with a paramour, to whom he advanced money and with whom he had been intimate for many months during his wife's lifetime. Shortly after the funeral he procured a room in a hotel under an assumed name and there lived with this woman, registering her as his wife.

Many circumstances, such as the disappearance of a diamond from Mrs. Price's ring, the torn right-hand glove, the broken shoe heel, the halting and unsatisfactory explanations made by Price to Mr. Dye, his

brother-in-law, about the ring, the diamond and the glove, and a large number of others, were proved on the trial. They were matters no one of which was of much importance in itself, but when taken together, of great significance and probative force. Defendant's adventures in matrimony seem to have been unfortunate. Mary was his third wife. When he first met her he had been twice married and twice divorced. The married life of defendant and his third wife was not at all times harmonious.

All the above facts were proven by the testimony of witnesses other than Etchison.

Etchison testified that defendant pushed his wife over the edge of the bluff; that they heard her moaning; that defendant threw the dog over the cliff; that with Price he went down to where Mrs. Price was lying; that she was still living; that defendant sent him to get help; that when he had turned away on his errand he heard a dull sound like a blow, and that later the same evening defendant told him that he regretted having had to hit his wife on the head with a stone. He also testified to conversations had previous to that time, in which defendant told Etchison that he intended to kill Mrs. Price and have it appear that her death was the result of an accident.

No good purpose can be accomplished by setting forth the relations, transactions and conversations between this defendant and Etchison during their long acquaintance, their money difficulties, their financial operations, their rare successes and frequent failures. The story told by Etchison seems to show that Price was able to command Etchison's services at any time, and that the latter was dominated to some extent by the strong will and personality of the former.

The errors assigned are principally that the verdict is not justified by the evidence; that the court erred in certain instructions to the jury; that the court erred in failing to give certain instructions; that error was committed on the trial in the admission of evidence; that error was committed in permitting certain questions on the cross-examination of defendant, and that the prosecuting attorney was guilty of misconduct prejudicial to defendant during the course of the trial and in his argument to the jury, thus preventing a fair trial.

1. An examination of the entire record and of the exhibits satisfies

us that there was ample evidence to support the verdict of the jury, and that no error can be predicated upon that ground. This being so, it was certainly not error for the court to refuse the request òf the defendant that the jury be directed to return a verdict of not guilty.

2. The court in its instructions to the jury said: "A witness is àn accomplice of the defendant on trial, if he himself could be indicted and punished for the offense either as principal or accessory."

It is argued that the correct rule is found in State v. Durnam, 73 Minn. 150, 165, 75 N. W. 1127, 1131, where it is said that "the general test to determine whether a witness is or is not an accomplice is, could he himself have been indicted for the offense either as principal or as accessory?" But it is hardly fair to dissociate a paragraph from its context and insist that it must be considered alone and by itself. We quote that part of the opinion in State v. Durnam, supra, which defines the word "accomplice": (p. 165) "An accomplice, in legal signification, is one who co-operates, aids or assists another in the commission of a crime, either as principal or accessory. The general test to determine whether a witness is or is not an accomplice is, could he himself have been indicted for the offense either as principal or as accessory? If he could not, then he is not an accomplice." The case of Com. v. Wood, 11 Gray, 85, cited by Mr. Justice Mitchell as authority for the statement last quoted, holds that a person who cannot be indicted for the offense charged is not an accomplice, which is no doubt a correct statement so far as it goes. But this court has never held that a person who could be indicted, or was under indictment, for the crime in relation to which he testifies was, as a matter of law, an accomplice. To make a witness an accomplice, it seems logical that it should appear that a crime has been committed, that the person on trial committed the crime, either as principal or accessory and that the witness co-operated with, aided or assisted the person on trial in the commission of that crime either as principal or accessory.

The court used the word "punished" in the sense of "judgment following conviction." No jury would assume that the law would punish a man for a crime of which he had not been found guilty. Although not in the highest degree technically correct, the language of the court was not necessarily erroneous. It had at least the merit of being easily understood and applied by the average juror.

3. It is urged that the court should have charged the jury that Etchison was, as a matter of law, an accomplice of defendant in the commission of the crime charged, if a crime was committed. The argument is based on the assumption that because Etchison was·indicted as a principal, he was, as a matter of law, an accomplice. But as already stated the mere fact that Etchison was indicted is not the test.

The court charged that whether or not Etchison was an accomplice was a question of fact for the jury to decide. "It is elementary that a trial court cannot instruct a jury to return a verdict of guilty in a criminal prosecution." State v. Nelson, 91 Minn. 143, 146, 97 N. W. 652, 653. An instruction that Etchison was, as a matter of law, an accomplice would have been tantamount to an instruction that defendant was guilty. State v. Lawlor, 28 Minn. 216, 9 N. W. 698.

4. The court gave the following instruction:

"If you find that he (Etchison) was an accomplice and a guilty participator in the crime so that if he were on trial he might be convicted on the evidence to which you have listened in this case, then the statute to which I have referred is applicable and you cannot find Price guilty upon Etchison's testimony, unless you find that the testimony of Etchison is corroborated, that is, supported or confirmed by other evidence in the case. And such other or additional evidence must relate to facts and circumstances which to your mind reasonably tend to show that Price committed the crime, either alone, or in conjunction with Etchison."

Defendant contends that this contains error because it eliminates from consideration of the jury the right to find that Etchison was an accomplice, although he might have been an accessory.

The whole charge must be read together. The court had just plainly told the jury that an accessory is an accomplice, and the jury could not assume that the court was trying to mislead them or to withdraw the instruction just given.

5. The statute relating to corroboration of the testimony of an accomplice had been read to the jury as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not

sufficient, if it merely shows a commission of the offense, or circumstances thereof." G. S. 1913, § 8463.

Thereupon the court added:

"Now, gentlemen, while this rule is wholesome and just, it is not to be technically or unreasonably applied. It is not designed to be so strained as to permit the guilty to escape. It does not mean that the testimony of an accomplice shall not be considered by the jury, and be given its due weight, neither does the rule require that the corroborating evidence shall be sufficient in itself to warrant the jury in convicting the defendant on trial, in this case, the defendant Price, and in finding him guilty of the crime alleged. It is enough for the jury to find that there are facts and circumstances in the case not dependent upon Etchison's testimony alone, which fairly weighed and considered incline their minds to the belief that his testimony upon the crucial point of the defendant's participation in the crime is substantially true."

The court then instanced circumstances proven on the trial by witnesses claimed to be confirmatory of Etchison's testimony, telling the jury that it was for them to determine whether the circumstances detailed, together with others not in dispute, were satisfactory to their minds.

We might quote at greater length from the able charge of the learned trial judge, but enough has been said to show that although error might possibly be predicated upon isolated excerpts therefrom, yet the charge as a whole did not misstate the law applicable to the case, and though the paragraph,

"It is enough for the jury to find that there are facts and circumstances in the case not dependent upon Etchison's testimony alone, which fairly weighed and considered incline their minds to the belief that his testimony upon the crucial point of the defendant's participation in the crime is substantially true,"

if standing alone, might be deemed erroneous, yet that paragraph referred to the testimony on the crucial point as to defendant's participation in the crime, and must be considered in the light of the whole charge, not as an isolated and complete statement of the law.

At the risk of being tedious, we may say that all the facts in this case were established by the evidence of witnesses other than Etchison, except the cause of Mrs. Price's fall and the blow which crushed the skull.

Price's story was in evidence. The experts all testified that the skull was not crushed in the fall from the cliff. No evidence is in the case that any one struck a blow before Mrs. Price was found lying at the bottom. Only these two men were with her at that time. One of them crushed her skull after she fell. Etchison said Price did it and admitted it to him afterwards. Price insisted that the whole happening was an accident, and that the head must have been crushed as a result of the fall, but nowhere did he testify that Etchison struck her. Nor did he voice even a suspicion that such was the case.

We have examined the other parts of the charge. What has been said applies to them. The record brings this case within the doctrine of State v. Nelson, 91 Minn. 143, 97 N. W. 652, that "new trials should be granted only where the substantial rights of the accused have been so violated as to make it reasonably clear that a fair trial was not had," and that where, after examination of the record, there is no doubt of the guilt of the accused, "alleged errors not affecting his substantial or constitutional rights should be brushed aside, and in their place substituted the almighty force and power of truth." That doctrine has been consistently applied by this court. See State v. Crawford, 96 Minn. 95, 104 N. W. 768, 822, 1 L.R.A.(N.S.) 839; State v. Williams, 96 Minn. 351, 105 N. W. 265; State v. Potoniec, 117 Minn. 80, 134 N. W. 305; State v. Rusk, 123 Minn. 276, 143 N. W. 782; State v. Brand, 124 Minn. 408, 145 N. W. 39; State v. Jacobson, 130 Minn. 347, 153 N. W. 845. We see no reason for departing therefrom. The errors in the charge, if any, were not such as to require a new trial.

6. The trial occupied several days. Many witnesses were examined. Physicians who were present at the autopsy testified as experts. Among other things, they testified as to the fatal wound and its cause. They were asked whether they had formed an opinion as to how the wound was inflicted, whether it was caused by the fall or by a blow, and testified that in their opinion it was not the result of the fall, but of a blow with some blunt instrument.

The only question presented is whether this is a subject for expert testimony. A duly-qualified physician and surgeon, familiar with anatomy, and of long practical experience, who has made a thorough autopsy which disclosed the cause of death to be a wound, may be asked to testify

as to what, in his opinion, caused the wound, whether it was the result of a blow or of a fall, and all the circumstances being shown, may testify to his opinion. His qualifications are for the court. The weight of his testimony is for the jury. Under the facts in the instant case expert testimony was not inadmissible. "Expert evidence is admissible whenever the subject of inquiry is such that, in the judgment of the trial judge, persons not versed therein are liable to prove incapable of forming a correct judgment in the premises without such aid. It is not an objection to such evidence that it bears directly upon the issue to be determined by the jury. The trial judge has a wide discretion in the application of the rule. The competency of a witness offered as an expert is a question addressed to the sound discretion of the trial judge." Spino v. Butler Bros. 113 Minn, 326, 331, 129 N. W. 590, 592; 1 Dunnell, Minn. Dig. and Supp. 1916, § 3325.

7. On cross-examination of defendant, the state was in several instances permitted, over objection, to ask questions of defendant relative to his past life. The facts relative to a certain assault with a weapon committed on a woman by defendant, to which he had testified on the examination in chief, were being inquired into. He was asked by his own counsel whether he had ever been convicted of a criminal offense. On answering in the affirmative, he was asked to state when and where. This he did. He was then asked to tell the circumstances, and he gave his version thereof.

During his cross-examination the prosecuting attorney went into this incident with great vigor and with minute particularity. The questions were not couched in the most diplomatic language. Objections were interposed and in some instances sustained. The general character of this cross-examination is complained of.

The extent to which a cross-examination may be carried is largely in the discretion of the trial court. In addition to this, it should be noted that the defendant himself opened the subject of inquiry by his testimony in chief and gave his own version of the transaction. Under these circumstances, the prosecutor was strictly within his rights in cross-examining defendant relative to the facts of the offense. The manner of the cross-examination was for the court, which had not disapproved it. The matter itself was a proper subject for cross-examination. People

v. Kimbrough (Mich.) 159 N. W. 533. The statute permits proof of the fact that a witness has been convicted of a crime, either by the record or by his cross-examination, "for the purpose of affecting the weight of his testimony" (G. S. 1913, § 8504), and the nature of the offense may be shown. Conviction of some crimes will reflect more on the credibility of a witness than would conviction of others, Thompson v. Bankers Mut. Casualty Ins. Co. 128 Minn. 474, 151 N. W. 180, Ann Cas. 1916A, 277. Proof that a witness has committed a crime may be an attack on his character, but the statute permits such proof.

8. During his cross-examination, the state asked questions reflecting on defendant's character, such as: "Were you convicted of anything in Wyandotte?" "Would you mind telling the court and jury how long you remained faithful to your marriage vows?" and others of like import. Some of these questions were permitted. Others were ruled out. The trial court ruled fairly on these matters, which were within its discretion, and in general kept the inquiry within reasonable bounds. The case was energetically prosecuted and the defense was ably conducted by keen and alert counsel. Some heat was engendered by clashes between counsel, but not to such an extent that the court was obliged to interfere. The course adopted by the prosecution and its general attitude were not marked by courtesy toward the defendant, and do not in some things meet our approval. But the trial court has not found cause for reversal for misconduct in these respects, although it is argued that such questions were an unfair attack on defendant's character.

The character and the personality of every person testifying on a trial are incidentally involved. A witness brings his character to the stand with him. The law may suppress it, keep the knowledge from the jury and sternly ignore it, but the witness who has spent his life in evil doing carries the effluvium of his wickedness and immorality into the court room with him, whether he be merely a witness or a defendant in a criminal prosecution. His immoral past accompanies him, and in spite of all rules of evidence, the stench of a wicked life taints the moral atmosphere, and in some measure affects his credibility. It is one of the penalties which must be paid by a wrongdoer. "Whatsoever a man soweth, that shall he also reap;" and if, in a proper case, the cross-examination develops matters pertinent to the inquiry and tending to affect the credibility of the witness,

the mere fact that the witness or a party to the action is prejudiced does not argue that error has been committed. "Among the many circumstances that contribute to form that general complex of impressions which we choose to call a verdict upon the issue, experience shows that the moral obliquity of a witness tends abundantly to smirch the cause for which he testifies." 2 Wigmore, Ev. § 983.

9. The prosecuting attorney is accused of such misconduct in his argument to the jury as prevented defendant from having a fair trial. It would merely extend this discussion to quote the expressions complained of. The state's argument was as a whole confined to the facts shown by the evidence, or to conclusions which might be drawn therefrom. The expressions used were fairly within the record, except in one or two instances when the prosecutor announced his individual opinions and beliefs drawn from the evidence. The address contained denunciation and invective, pleading, pathos and appeal. The trial court did not interfere either at the time or on the motion for a new trial. In its charge the court instructed the jury that neither court nor jury could surrender their judgment to the control of counsel on either side; that they were not wholly impartial, although they might be of assistance to court and jury in determining the truth; that it is the right and duty of counsel to fairly maintain their cause, and that they may emphasize those features of law and evidence which in their judgment sustain their contentions, but that the jury must remember that they are the ones to determine the facts, not the advocate or the court, and that the jury cannot escape their duty and be faithful to their oath. Both the argument of the prosecuting attorney and the statement of the court are assigned as error.

"Much latitude must necessarily be allowed attorneys in summing up to the jury, and an unreasonably strict rule limiting discussion to the immediate points in evidence should not be established." State v. Nelson, 91 Minn. 143, 150, 97 N. W. 652, 655.

The argument to the jury did not gravely trespass against this rule. The court correctly informed the jury what their duty was and the purpose of the argument. The matter was largely within its discretion.

Its discretion was not abused, and we cannot say that the rights of the defendant were prejudiced either by the argument of the county attorney or the charge of the court in that respect.

Other assignments of error have been examined and found not well taken.

Order affirmed.