STATE v. RUBIN SHETSKY, ALSO KNOWN AS WAYNE SAUNDERS.[1]

December 23, 1949.

No. 35,062.

[1]Reported in 40 N. W. (2d) 337.

See, State ex rel. Shetsky v. Utecht, 228 Minn. 44, 36 N. W. (2d) 126.

*Carl W. Cummins* and *William C. Green,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Charles E. Houston* and *Ralph A. Stone,* Assistant Attorneys General, *Michael J. Dillon,* County Attorney, and *Per M. Larson,* Assistant County Attorney, for the State.

LORING, CHIEF JUSTICE.

On October 17, 1945, defendant was found guilty of murder in the second degree. He was originally sentenced to life imprisonment on June 6, 1946. He was absent at the time sentence upon him was pro-

nounced, having fled during the trial. He was apprehended some 18 months later.

Subsequently, on March 4, 1949, pursuant to a mandate of this court ordering his discharge from imprisonment for the purpose of resentencing (State ex rel. Shetsky v. Utecht, 228 Minn. 44, 36 N. W. [2d] 126, 6 A. L. R. [2d] 988), he was again sentenced to life imprisonment. Judgment was entered to such effect on March 5, 1949. This appeal is from the judgment and from an order denying his motion for a new trial. For a summary of the facts, reference is made to State ex rel. Shetsky v. Utecht, *supra.*

On this appeal, defendant has presented 18 assignments of error, but we find it necessary to discuss only his contention that he was deprived of a fair trial and that his constitutional rights were violated by reason of the fact that certain remarks, made by the trial court to the jury during his trial, were prejudicial and otherwise improper.

During the course of the trial, immediately after defendant failed to appear in court, the trial judge, in open court, stated to the jury the following:

"The defendant is not present. I want to have a talk with you jurors this morning. * * * You know about the disappearance of the defendant, of course. There are persons who wonder why a man charged with this kind of a serious crime should be out on bail. In the first place, the Constitution of this State absolutely requires me to fix bail for a person charged with second degree murder. I didn't have any option about it. *If I had, I wouldn't have put him out on bail.* I don't think—but I won't say about that. Not only did I have to fix bail, but I had to fix a reasonable amount. * * * Now, in the middle of the trial he has failed to show up. Members of the jury, and all persons connected with this case, I consider this a very great wrong on this court and the courts of this state, and a very great wrong against our government and system of government and law and order. *I don't intend to take it without doing quite a bit about it.* * * * This defendant could have met with foul play, or he could have voluntarily left this state. I will say to you that I have

had complete cooperation from the law enforcing officers of this state, complete cooperation from the Sheriff's office and police. While I say we don't know whether it is foul play or whether he left, there has not been one single bit of evidence of foul play in this locality against this defendant. That much I can tell you as a positive fact. The hospitals have been checked and the territory has been checked, and there is no evidence of anything of the sort. * * * *I just simply don't intend to take this sitting down, I will tell you that, members of the jury, and I want you to cooperate with me and help me out on this thing to see it through and see that law and order is going to be victorious in this contest,* if that is what it is. I assume you know that immediately yesterday when he didn't show up his bond was forfeited and a bench warrant is out for him." (Italics supplied.)

It is the contention of defendant that the foregoing remarks were prejudicial and in violation of his constitutional right to due process; that they constituted prejudicial comments to the jury reflecting upon his character and implying his guilt and hence that they were violative of due process; that, regardless of his flight, he was entitled to the constitutional protections to which innocent and guilty alike are entitled; and that his absence from the trial, though voluntary, did not constitute a waiver of or justification for the denial of such protections.

Minn. Const. art. 1, § 7, provides: "No person shall be held to answer for a criminal offense without due process of law, * * *." Under this and similar provisions, the courts have uniformly held that a defendant in a criminal prosecution is entitled to be tried without prejudicial remarks on the part of the presiding judge and without any expressions on his part which would point to his guilt or discredit or prejudice him with the jury.

The reason for the rule is expressed by the United States Supreme Court in Quercia v. United States, 289 U. S. 466, 470, 53 S. Ct. 698, 699, 77 L. ed. 1321, 1325, as follows:

"* * * The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' "

In Hunter v. United States (5 Cir.) 62 F. (2d) 217, 220, the rule was expressed in the following language:

"* * * That the district judge did not intend to be unfair is beside the question. The case was tried in such a way that the jury, in considering as a whole the judge's questions and charge, might well have reached the conclusion that he was not impartial, but was insisting upon a conviction. It is vastly more important that the attitude of the trial judge should be impartial than that any particular defendant, however guilty he may be, should be convicted. It is too much to expect of human nature that a judge can actively and vigorously aid in the prosecution and at the same time appear to the layman on the jury to be impartial."

In State v. Koch, 33 Mont. 490, 496, 85 P. 272, 273, 8 Ann. Cas. 804, the Montana supreme court stated:

"* * * The guaranty contained in this provision is general in its terms and of universal application, including misdemeanors as well as felonies, and unless there is some exception by express provision found elsewhere, or some principle of construction by which an exception may be made, it must be construed to mean exactly what it says, and it must follow that the question of guilt or innocence of the defendant must be submitted to, and determined by, the jury, however clear and unimpeached or free from suspicion the evidence may be."

See, also, Egan v. United States, 52 App. D. C. 384, 287 F. 958; Frantz v. United States (6 Cir.) 62 F. (2d) 737; Williams v. United States (9 Cir.) 93 F. (2d) 685; People v. Pokrajac, 206 Cal. 259, 274 P. 63; People v. Williams, 55 Cal. App. (2d) 696, 131 P. (2d) 851; Hansen v. State, 141 Neb. 278, 3 N. W. (2d) 441; Moore v. State, 147 Neb. 390, 23 N. W. (2d) 552; People v. Silverman, 252 App. Div. 149, 297 N. Y. S. 449, reversing People v. Singer (Sup.) 295 N. Y. S. 874; Commonwealth v. Petrillo, 338 Pa. 65, 12 A. (2d)

317; Ables v. State, 103 Tex. Cr. 456, 281 S. W. 858; Pinn v. Commonwealth, 166 Va. 727, 186 S. E. 169; 23 C. J. S., Criminal Law, § 987.

This court has expressed a rule in conformity with the foregoing in State v. Hansen, 173 Minn. 158, 161, 217 N. W. 146, 147, when it said:

"* * * The effect of these occurrences upon the average juror would likely be that this witness was thoroughly discredited and any value that his testimony might otherwise have had was greatly impaired, if not wholly destroyed, and that defendant's counsel was to some extent discredited.

"* * * The learned trial court, with no intention of prejudicing the defendant's cause, made some erroneous rulings and uncalled for remarks. The verdict in the case has sufficient support in the evidence. But there is the usual direct conflict in the testimony. Complainant gave positive testimony in support of the charge. Defendant as positively denied the charge. In that situation the issue of fact is squarely for the jury to decide. The issue should go to the jury free from any improper evidence, comments or suggestions tending to impair the credibility of the witnesses on either side."

We are of the opinion that the trial court's statements constituted reversible error. M. S. A. 631.08 authorizes the trial court to present the facts of the case to the jury. The court may review and analyze the evidence, but, in commenting on the evidence, it must do so fairly and impartially without injecting prejudicial remarks. State v. Rose, 47 Minn. 47, 49 N. W. 404; State v. English, 62 Minn. 402, 64 N. W. 1136; State v. Hoy, 83 Minn. 286, 86 N. W. 98; State v. Yates, 99 Minn. 461, 109 N. W. 1070; State v. Minneapolis Milk Co. 124 Minn. 34, 45, 144 N. W. 417, 421, 51 L.R.A. (N.S.) 244; State v. Dolliver, 150 Minn. 155, 184 N. W. 848; 2 Dunnell, Dig. § 2479. On the whole, these cases involve improper comments upon facts which are in evidence. In the instant case, the remarks of the trial judge were not only prejudicial, but they were objectionable because they were based on facts not then in evidence. The court's state-

ments to the effect that "the Constitution of this State absolutely requires me to fix bail for a person charged with second degree murder. I didn't have any option about it. If I had, I wouldn't have put him out on bail"; that "I don't intend to take it without doing quite a bit about it"; that "I just simply don't intend to take this sitting down, I will tell you that"; and that "I want you to cooperate with me and help me out on this thing to see it through and see that law and order is going to be victorious in this contest," were bound to influence the jury in its determination of defendant's guilt or innocence. In no respect do we condone defendant's conduct in absenting himself from the trial. The trial court correctly determined to proceed with the case in his absence. His right to be present at subsequent trial proceedings or at the bringing in of the verdict was waived when he fled. See, State ex rel. Shetsky v. Utecht, *supra.* However, once the trial was resumed, it should have proceeded in accordance with established principles of due process, as above outlined, and the failure in this respect requires a new trial.

■ After defendant's flight, it would have been proper to receive evidence thereof, since flight in connection with other proof may form the basis from which guilt may be inferred. In Hickory v. United States, 160 U. S. 408, 416, 16 S. Ct. 327, 330, 40 L. ed. 474, 477, the United States Supreme Court reversed the trial court because of prejudicial statements made to the jury after the flight of a defendant. There, evidence of flight was submitted to the jury, and the trial court then charged it as follows:

"'* * * the law recognizes another proposition as true, and it is, that 'The wicked flee when no man pursueth, but the innocent are as bold as a lion.' That is a self-evident proposition that has been recognized so often by mankind that we can take it as an axiom and apply it in this case. Therefore, the law says that if after a man kills another that he undertakes to fly, if he becomes a fugitive from justice, either by hiding in the jurisdiction, watching out to keep out of the way of the officers, or of going into the Osage country out of the jurisdiction, that you have a right to take that fact into

consideration, because it is a fact that does not usually characterize an innocent act."

In holding the charge erroneous, the United States Supreme Court quoted with approval the language of Wharton on Criminal Evidence as follows (160 U. S. 420, 16 S. Ct. 332, 40 L. ed. 478) :

"* * * The question [of the weight of the evidence of flight], it cannot be too often repeated, is simply one of inductive probable reasoning from certain established facts. All the courts can do when such inference is invoked is to say that escape, disguise, and similar acts afford, in connection with other proof, the basis from which guilt may be inferred, but this should be qualified by a general statement of the countervailing conditions, incidental to a comprehensive view of the question."

The court then quoted (160 U. S. 423, 16 S. Ct. 333, 40 L. ed. 479) from Starr v. United States, 153 U. S. 614, 626, 14 S. Ct. 919, 923, 38 L. ed. 841, 845, and the language therein approved in the case of Burke v. Maxwell, 81 Pa. 139, 153, which stated:

"* * * When there is sufficient evidence upon a given point to go to the jury, it is the duty of the judge to submit it calmly and impartially. And if the expression of an opinion upon such evidence becomes a matter of duty under the circumstances of the particular case, great care should be exercised that such expression should be so given as not to mislead, and especially that it should not be one-sided."

In the case at bar, the trial court's comments upon defendant's flight were not only one-sided, but they did not fall within the above formula. The only countervailing condition which the court suggested was that defendant may have met with "foul play"; but any inferences in defendant's favor were immediately negated by the succeeding remarks. Indeed, the court's statements assumed to present facts to the jury which had not yet been put in evidence. It stated:

"* * * This defendant could have met with foul play, or he could have voluntarily left this state. I will say to you that I have had complete cooperation from the law enforcing officers of this state, complete cooperation from the Sheriff's office and police. While I say we don't know whether it is foul play or whether he left, there has not been one single bit of evidence of foul play in this locality against this defendant. That much I can tell you as a positive fact. The hospitals have been checked and the territory has been checked, and there is no evidence of anything of the sort."

These statements were mere hearsay and were not given by a witness under oath. Evidence of flight, when properly presented, is admissible, but it is not within the province of the trial court to make one-sided statements to the jury as to facts connected with defendant's absence or to put the facts in evidence itself.

■ Minn. Const. art. 1, § 6, guarantees an accused in a criminal prosecution the right to a speedy and public trial by an impartial jury. For this reason, a court cannot direct a verdict of guilty in such a prosecution. State v. Stock, 163 Minn. 271, 203 N. W. 964; State v. Koch, 33 Mont. 490, 85 P. 272, 8 Ann. Cas. 804; Shipp v. State, 128 Tenn. 499, 161 S. W. 1017; State v. Riley, 113 N. C. 648, 18 S. E. 168; Sparf and Hansen v. United States, 156 U. S. 51, 15 S. Ct. 273, 39 L. ed. 343; United States v. Taylor (C. C.) 11 F. 470; see, State v. Nelson, 91 Minn. 143, 97 N. W. 652; State v. Price, 135 Minn. 159, 160 N. W. 677; 2 Bishop, New Criminal Procedure (2d) § 977, p. 813; 1 Zoline, Federal Criminal Law and Procedure, § 419. Although the trial court may review and analyze the evidence, remarks which take away the free will of the jury to arrive at its own verdict violate the accused's constitutional right to an impartial jury. Besides the prejudicial comments noted above, the trial judge declared:

"* * * I want you to cooperate with me and help me out on this thing to see it through and see that law and order is going to be victorious in this contest, if that is what it is."

No intelligent juryman could misunderstand this language, delivered as it was in an atmosphere of judicial indignation, as other than a demand that the jury bring in a verdict of guilty in order that "law and order" should "be victorious in this contest." From that time on, no juror could possibly be unaware of just what the judge desired in the way of a verdict, that nothing short of a verdict of guilty would vindicate the judge or the forces of "law and order." The court could not, of course, direct a verdict, but this was accomplishing what it could not do directly. It follows that the remarks deprived defendant of his constitutional right to an impartial jury.

It makes no difference whether the guilt of defendant may have been conclusively proved. It is not our function to try defendant in this court. To hold that the facts are conclusive of defendant's guilt, and therefore that whatever remarks were made are not prejudicial, violates his right to a trial by an impartial jury. See, State v. Hutchison, 121 Minn. 405, 409, 141 N. W. 483, 484. Because of the constitutional guarantee of an impartial jury trial, the rule in civil cases that if the evidence is conclusive and the verdict is right as a matter of law errors are not ground for reversal does not prevail in criminal cases.

Based upon the foregoing authorities, we are compelled to reverse the judgment and order appealed from and grant defendant a new trial because of the violation of his constitutional rights, as above outlined. Our decision on this point makes it unnecessary to discuss or consider the other points raised upon appeal. They will probably not occur on a new trial. It is suggested, however, that where a view of the *locus in quo* is ordered by the trial court an official court reporter should be present at such time.

It is the judgment of this court that the judgment and sentence appealed from be vacated and the order denying a new trial be reversed. A new trial is granted.