STATE, RESPONDENT, *v.* FOWLER, APPELLANT.

(Nos. 4,301, 4,400.)

(Submitted March 9, 1921. Decided March 29, 1921.)

[196 Pac. 992.]

*Criminal Law—Sedition—Constitution—Information—Denial of Counsel—Verdict—Judgment—Modification After Rendition —Execution—When Stayed.*

Sedition Act—Constitutionality.
   1. Chapter 11, Laws Extra. Sess. 1918, defining the crime of sedition and prescribing its punishment, *held* not open to the constitutional objection that its subject matter is one upon which the Congress alone may legislate.

Sedition—Information—Place—Sufficiency.
   2. The charge in the information that the seditious language alleged to have been used by defendant was uttered in M. county was a sufficient allegation of the place.

Same—"Publication" of Language Used—Information—Sufficiency.
   3. Failure to charge in the information that defendant uttered seditious language in the presence of any person or persons did not render it fatally defective, the word "publish," employed in the pleading, comprehending the idea that it was used in the presence of others.

Same—Information—Insufficiency—Waiver.
   4. By pleading to the information without interposing a demurrer that the facts stated did not constitute a public offense, defendant waived objections to its sufficiency.

Same—Trial—Constitution—Denial of Counsel—What Does not Constitute.
   5. On his arraignment defendant informed the court that he did not wish to employ counsel, and was admitted to bail, furnishing a $10,000 cash bail bond. On the day of trial, four months there-

after, he stated to the court that he was without counsel to defend him, but did not ask for time to procure counsel, and the trial proceeded. *Held,* that nothing short of refusal by the court, on application to it for time to procure counsel, disclosing a substantial reason why defendant had not done so, will justify a conclusion that defendant was denied his constitutional right to be heard by counsel.

Same—Verdict—Misspelling of Word—Effect.

6. The misspelling of the word "discretion" in that part of the verdict in which the jury left the punishment to the "*discreation* of the court" did not render the judgment invalid.

Same—Excessive Punishment.

7. The judgment imposing a fine of $3,000 and sentencing defendant to imprisonment for a term of not less than four nor more than eight years, *held* not excessive.

Same—Trial—Failure to Object to Instructions or Evidence—Error—Waiver.

8. In the absence of objections to the giving of instructions or the admission of evidence, assignments of error based upon alleged error in that regard cannot be considered on appeal.

### ON MOTION FOR REHEARING.

Criminal Law—Judgment—Modification After Rendition—Procedure.

9. After a judgment has been rendered, the court cannot change or modify it except upon motion for new trial, if such procedure is applicable to the particular case; otherwise resort for relief must be had to the appellate court.

Same—Judgment—What Does not Constitute Modification.

10. Where the judgment after imposing a sentence of imprisonment provided that defendant pay a fine, "and in case said fine be not paid at the expiration of the foregoing sentence," he be confined in the prison for a certain additional period, the court on the next day ordered the clerk to apply a sum sufficient to the payment of the fine out of the cash bail in his hands, not fixing any date for its payment, but simply making provision for its satisfaction as required by Chapter 11, Extra. Sess. Laws 1918, its action did not amount to a modification of the judgment.

Same—Order After Final Judgment Appealable.

11. From an order made after final judgment in a criminal case, defendant may appeal, under section 9397, Revised Codes.

Same—Execution of Judgment—When Stayed.

12. Execution of a judgment in a criminal case is not stayed by appeal, but may be stayed by filing with the clerk a certificate of probable cause issued by the judge or a justice of the supreme court.

*Appeals from District Court, Madison County; Wm. A. Clark, Judge.*

LOUIS L. FOWLER was convicted of sedition and appeals from the judgment of conviction, from an order denying his motion for a new trial, and from an order made after judgment. Affirmed.

*Mr. Geo. D. Pease,* for Appellant, submitted a brief, and argued the cause orally.

According to the information, there is no allegation that any statements were made by the defendant to any person or persons, or within the presence of any person or persons, nor is any particular place mentioned in the information where such conversation occurred, except by the general allegation that they occurred in Madison county. In other words, the particulars of time, places and persons present were not mentioned or described in the information, and for that reason the appellant respectfully contends that the information itself is fatally defective. (*Phelan et al.* v. *United States,* also *Collins* v. *United States,* decided October 28, 1918, by the circuit court of appeals for the ninth district.)

The court erred in refusing to continue the trial of the case when the defendant appeared without counsel. (*State* v. *Moore,* 61 Kan. 732, 60 Pac. 748.) The record in this case, from the time the defendant plead until after judgment was entered, bristles with errors that either could have been prevented had counsel been in the case, or at least exceptions taken that would have insured the defendant of the preservation of his rights. The insufficiency of the information, the different offenses charged therein, the inadmissibility of other acts than those charged in the information without any instruction whatever in limiting the scope of such evidence, the failure to present any evidence on the part of the defendant, the absence of material witnesses, and the absence of any showing made at the time of the trial for such witnesses, the absence of any instructions upon the part of the defendant, the giving of erroneous instructions, the receiving of a defective verdict, the absence of any motion in arrest of judgment, the making of the order after judgment without notice or without objection or exception, are all matters that have found their place in this record because of the absence of experienced counsel, and each and all of the same are matters that interfered with the substantial rights of the defend-

ant and prevented him from having a fair and impartial trial in the lower court. (*People* v. *Blevins,* 251 Ill. 381, Ann. Cas. 1912C, 451, 96 N. E. 214.) The burden is at all times upon the state, its prosecuting officer, and the trial court, to see that the defendant receives a fair trial, and if they fail in this respect, even though he be without counsel, a higher court will give to him the rights guaranteed by the Constitution. (*State* v. *Kanakaris,* 54 Mont. 180, 169 Pac. 42; *Farris* v. *People,* 129 Ill. 521, 16 Am. St. Rep. 283, 4 L. R. A. 582, 21 N. E. 821.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Otto A. Gerth,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. L. A. Foot,* Assistant Attorney General, argued the cause orally.

In the Constitution of Montana, Article III, section 16, we find a provision as follows: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, *etc.*" Courts have generally interpreted such a provision to mean that the defendant shall not have the right to appear both in person and by counsel so far as court procedure is concerned, but that he may appear either in person or by counsel. In other words, he has the privilege of conducting court proceedings himself or he may do so through counsel. This privilege was certainly extended in this case. He expressly stated to the court that he had no counsel and did not care for one when he was arraigned. Section 9188 of the Criminal Code provides that a defendant charged with a crime must be informed of his right to counsel. If he desires the aid of counsel and is unable to employ one, the court must assign counsel to defend him. In this case it is not a question of inability to employ counsel, but it was only a question of time. (See 8 R. C. L., p. 3, sec. 39.)

In the case of *Dietz* v. *State,* 149 Wis. 462, Ann. Cas. 1913C, 732, 136 N. W. 166, we have a situation somewhat similar to the case at bar. The only difference is that instead of the defendant advising the trial court on arraignment that he did

not desire counsel, he advised said court at the time of the trial of this fact. The defendant in that case was convicted of murder, and thereafter he employed counsel, who moved for a new trial upon the ground that the defendant did not have the benefit of counsel at the trial, and for that reason many and grave errors were permitted which an experienced lawyer might have prevented. The court held the contention without merit. (See, also, *State* v. *Yoes,* 67 W. Va. 546, 140 Am. St. Rep. 978, 68 S. E. 181; *Barnes* v. *Commonwealth,* 92 Va. 794, 23 S. E. 784.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Appeals by the defendant from a judgment convicting him of the crime of sedition and from an order denying his motion for a new trial.

Omitting the formal parts, the information charges: "That the said Louis L. Fowler, whose true name the county attorney is informed is Joseph Clingenhoefer, on or about the tenth day of April, 1918, at the county of Madison, state of Montana, and when the United States was engaged in war, did wilfully, unlawfully, wrongfully and feloniously utter and publish disloyal, profane, violent, scurrilous, contemptuous, slurring and abusive language about and concerning the soldiers of the United States, by stating with reference to the raising of wheat to feed our soldiers, 'Let the sons-of-bitches eat hay,' thereby advocating the curtailment of production of things and products necessary and essential in the prosecution of the war, with intent by such curtailment to cripple and hinder the United States in the prosecution of the war; and said defendant said, 'This is not our war; we have no business being in this war; Wilson did not do right in getting us into this war to fight somebody else's battles'; and defendant said, with reference to the war, 'If I do any fighting in this war, I will fight the British,' and further said, referring to a soldier dressed in uniform, 'Anyone who will wear the uniform of

the United States is a damned fool'; and with reference to the purchase of Liberty Bonds, defendant said, 'I will not buy Liberty Bonds but will dispose of my property, go to South America and let Germany have my money,' and said with reference to the person who asked him to buy Liberty Bonds, 'He must think I am a damned fool, to buy Liberty Bonds, and go against my own'; that the language so used by the defendant was calculated to bring the form of the government of the United States, the soldiers of the United States, and the uniform of the army into contempt, scorn, contumely and disrepute, and said language so used by defendant was calculated to incite and inflame resistance to the duly constituted federal and state authority in connection with the prosecution of the war, contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the state of Montana.''

1. The contention is made that the Act of the legislature [1] which defines the crime of sedition and prescribes its punishment (Chap. 11, Laws Extra. Session, Fifteenth Legislative Assembly 1918), is unconstitutional, in that the subject matter of it is one upon which the Congress of the United States alone may legislate. The same contention was made and overruled by this court in the case of *State* v. *Kahn,* 56 Mont. 108, 182 Pac. 107. Reference to what was said on this subject in that case is a sufficient answer to the argument now made by counsel.

2. It is argued that the facts stated in the information do [2, 3] not constitute a public offense, in that it is not alleged that the language charged to be seditious was uttered by the defendant either in the presence of or to any person or persons, or at any particular place in Madison county. Besides charging that the defendant did "utter and publish disloyal, profane, violent, scurrilous, contemptuous, slurring and abusive language about and concerning the soldiers of the United States," following these qualifying words the information sets forth the language used, the place, that is, the county where

publication was made, and also the time when the language
was used. The allegation that the crime was committed in
Madison county is a sufficient allegation of the place. This
is sufficient to meet the requirements of the provisions pre-
scribing its form and contents. (Rev. Codes, secs. 9147–9149.)
Eliminating all of the other language charged to have been
uttered by the defendant, the expression, "Let the sons-of-
bitches eat hay," referring to the raising of wheat to feed our
soldiers, comes clearly within the terms of the statute. At the
time the words were uttered there were no soldiers for whom
wheat was or could be raised in Montana, other than the
soldiers of the United States. That the expression comes
within the qualifications embodied in the terms "contemptuous"
and "slurring" employed in the statute and charged in the in-
formation, cannot be questioned. That it was used in the
presence of others is comprehended in the meaning of the
word "publish"; for the sense in which this term is ordinarily
understood,—the meaning to be assigned to it here,—is "to
make public; to make known to people in general; to divulge,
as a private transaction." (Webster's International Diction-
ary.) The discussion of the information in the case of *State*
v. *Wyman,* 56 Mont. 600, 186 Pac. 1, is applicable to the one
in hand. Conceding, however, for present purposes, that the
information is indefinite in that it omits to state the names of
the person or persons in whose presence and hearing the state-
ment was made, no objection was made to it in the court be-
[4] low by demurrer under section 9200 of the Revised
Codes. By pleading to the information the defendant waived
all objections to its sufficiency, "except that the objection to
the jurisdiction of the court over the subject of the indictment
or information, or that the facts stated do not constitute a
public offense, may be taken at the trial, under the plea of not
guilty, or after the trial, in arrest of judgment." (Rev.
Codes, sec. 9208; *State* v. *Newman,* 34 Mont. 434, 87 Pac. 462;
*State* v. *Tudor,* 47 Mont. 185, 131 Pac. 632; *State* v. *Vinn,* 50
Mont. 27, 144 Pac. 773.) The same may be said of the con-

tention, incidentally made, that the information charges more than one offense. (*State* v. *Rodgers*, 40 Mont. 248, 106 Pac. 3; *State* v. *Mahoney*, 24 Mont. 281, 61 Pac. 647.)

3. It is contended that the court erred in refusing to grant [5] defendant a continuance when the cause was called for trial because he appeared without counsel. The facts in this connection are the following: The defendant was arraigned for his plea to the information on May 11, 1918. At that time he stated to the court that he did not wish to employ counsel to defend him but desired to proceed without counsel. He thereupon entered his plea of not guilty and was admitted to bail in the sum of $10,000, which he gave by depositing with the clerk that amount in cash. On September 9, the court called its calendar and the cause was set for trial at 2 o'clock on October 16. On that day, at the hour fixed, the cause came on regularly for trial, whereupon the defendant stated that he was without counsel to defend him. The court explained to him that he had had ample time to obtain counsel and he must proceed with the trial.

It will be noted that the defendant did not ask time to procure counsel, but merely stated that he was without counsel. Under the circumstances we do not think the court deprived him of any constitutional right, as counsel contends. Having at the time of his arraignment expressly stated that he did not desire counsel to defend him, and having had ample time thereafter to procure counsel and prepare his defense, we do not think he may now insist with good grace that he was not accorded every right to which he was entitled. We are confirmed in this view when we call to mind that he is a man of ample means, which is demonstrated by the fact that he was able to deposit $10,000 in cash for his bail, as well as by the further fact that he is apparently a prosperous farmer, and therefore a man of fair average intelligence, who could appreciate the seriousness of the charge preferred against him. So far as we can judge from what occurred at the time, the defendant did not express a desire for counsel, nor did he in-

timate to the court that he would procure counsel if he should
be allowed time to do so. The court had no assurance that if
he should be granted time he would be more assiduous than he
had been since he had entered his plea or since he had been
notified of the setting of the cause for trial. The Constitu-
tion guarantees every defendant the right to be heard by him-
self, as well as by counsel. It is held by the courts, however,
that this right is different in its nature from the right of trial
by jury. The guaranty of the latter is prohibitive in char-
acter and cannot be waived. (*State* v. *Koch,* 33 Mont. 490, 85
Pac. 272; *State* v. *Maine,* 27 Conn. 281; *State* v. *Yoes,* 67
W. Va. 546, 140 Am. St. Rep. 978, 68 S. E. 181; Thompson on
Trials, sec. 2149.) The right to appear by counsel is a per-
sonal privilege to be availed of by the accused at his pleasure,
and, if he is *sui juris* and not laboring under any disability, he
may act as his own counsel. If he elects to do this—being
able financially to employ counsel—he is not entitled to a new
trial on the ground that he was not represented by counsel.
(*Barnes* v. *Commonwealth,* 92 Va. 794, 23 S. E. 784; *State* v.
*Williams,* 45 La. Ann. 736, 12 South. 932; R. C. L. 83; and
cases cited *supra.*) Section 9188 of the Revised Codes declares
that the defendant must be informed of his right to counsel.
If he desires but is unable to employ one, the court must ap-
point one for him, but when he, as here, has notified the court
that he does not desire counsel, he indicates his election to rely
upon his own skill and ability, and the court may proceed with
the trial in the ordinary way. Under these circumstances we
think nothing short of a refusal of an application to the court
by the defendant for time to procure counsel, disclosing a sub-
stantial reason why he has not done so, would be a sufficient
reason to justify a conclusion that the court has violated his
constitutional rights.

4. The jury returned the following verdict: "We, the jury
[6] in the above-entitled action, find the defendant, Louis L.
Fowler, guilty of the crime of sedition in manner and form as
charged in the information and fix and assess his punishment

at the *discreation* of the court.'' The contention is made that it is rendered so defective by the misspelling of the word *"discretion"* that judgment should not be rendered upon it. There can be no doubt what the jury intended, *viz.,* to find the defendant guilty as charged, and to leave the punishment to be fixed by the court. Section 9330 of the Revised Codes authorizes this to be done. If it be conceded, however, that the latter part of the verdict is unintelligible, this may be omitted entirely, leaving a categorical finding of guilty of the crime as charged in the information. Under section 9330, *supra,* it was the duty of the court to eliminate this part of the verdict and to assess the punishment which in its discretion it thought proper, within the limits prescribed by the statute. (*In re Collins,* 51 Mont. 215, 152 Pac. 40; *Ex parte Gomez,* 52 Mont. 189, 156 Pac. 1078.) There is no merit in the contention.

5. It is said that the court imposed an excessive punishment. [7] It adjudged the defendant to pay a fine of $3,000 and to undergo imprisonment in the state prison for a term of not less than four nor more than eight years. The statute declares that ''every person found guilty of the crime of sedition shall be punished for each offense by a fine of not less than $200 nor more than $20,000, or by imprisonment in the state prison for not less than one year nor more than twenty years, or by both such fine and imprisonment.'' It is apparent that the penalty inflicted upon the defendant is well within the utmost limit to which the court could go. There was no error. After reading the evidence, keeping in mind that the defendant was not represented by counsel, we are inclined to the opinion that the penalty involved was severe. Nevertheless, this is a matter with which this court has nothing to do. If the defendant desires relief in this regard, he should apply to the executive department of the government, in which is lodged the power of commutation or pardon.

6. Contention is made that the verdict is contrary to the evidence. We have read the evidence with the care which the

importance of this case to the defendant requires. . We find that it is amply sufficient to sustain the verdict.

7. The rest of the fifteen assignments of error argued by counsel are predicated upon the giving of one instruction, several rulings upon questions of evidence, and an order made by the court after judgment, directing the clerk to apply $3,000 of the cash deposited by the defendant for his bail, to the pay-

[8] ment of the fine. No objection was made to the instruction nor was any made to the introduction of any of the evidence. These assignments based upon error in the instruction and in the rulings upon questions of evidence, therefore, cannot be considered. The order directing the clerk to appropriate a part of the cash bail to the payment of the fine is not reviewable on appeal from the judgment, nor is it a matter which arose on the motion for a new trial.

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES REYNOLDS, COOPER, HOLLOWAY and GALEN concur.

---

(Decided May 2, 1921.)

ON MOTION FOR REHEARING.

[197 Pac. 847.]

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In a petition for rehearing, counsel calls attention to the fact that besides the appeals from the judgment and the order denying the motion for a new trial, defendant also took a separate appeal from an order after judgment directing the clerk to apply a portion of the cash deposited by the defendant for bail to the payment of the fine imposed by the judgment. It is true that the appeal from this order was overlooked. The appeals from the judgment and this order were

taken on October 22, four days after the judgment was pro-
nounced, and the appeal from the order denying the new trial
was taken on April 7, 1919, several months later, the appeals
being presented in this court by two transcripts filed under
separate numbers. The oversight is due to the fact that the
court proceeded upon the assumption, without critical exam-
ination of the notice, that the former was a record of an ap-
peal from the judgment only. But it does not follow that by
reason of this oversight a rehearing should be granted.

Counsel insists that the judgment expressly granted the de-
[9, 10]    fendant the privilege of paying the fine at the ex-
piration of the term of imprisonment and that the order modi-
fied the judgment by taking away this privilege, which the
court was without jurisdiction to do. If counsel's assumption
were justified by the record, his conclusion would be correct.
After a court has rendered such a final judgment as it intends
to render, it cannot thereafter change or modify it except
upon a motion for new trial, if this method is applicable to the
particular proceeding; otherwise, the aggrieved party must re-
sort for relief to the appellate court. When the judgment has
been rendered, the court loses jurisdiction over the subject
matter, other than to see that the entry of it as rendered is
made by the clerk and that the rights fixed by it are properly
enforced. (*State ex rel. McHatton* v. *District Court,* 55 Mont.
324, 176 Pac. 608, and cases cited.) When we examine the
judgment and order, however, we find no foundation for coun-
sel's assumption. The judgment, after imposing the imprison-
ment, adds: ''And that said defendant be fined in the sum of
three thousand dollars, and in case said fine be not paid at the
expiration of the foregoing sentence, that he be confined in the
said state prison at Deer Lodge, for a period represented by
a credit of two dollars per day until the amount of the said
fine is fully paid.'' The defendant was then remanded to the
custody of the sheriff, to be by him delivered into the custody
of the proper officer of the state prison. In other words, the
judgment was put in process of execution. It did not assume

to fix any date for the payment of the fine, but merely made provision for its payment or satisfaction as the statute provides. (Chap. 11, 15th Extra. Sess., p. 28.)

In view of the fact that the deposit was in the hands of the clerk, it was his duty, under direction of the court, to apply it in satisfaction of the fine. (Rev. Codes, sec. 9463.) The judgment was pronounced on October 18. On the next day the court, referring to the judgment, made an order as follows: "It is hereby ordered that the said clerk of this court do apply out of the $10,000 in his hands belonging to the said Louis L. Fowler the sum of $3,000 in satisfaction of said fine, which said sum shall be disposed of as follows": The following part of the order contains directions to the clerk to make disposition of the fine as required by other provisions of the Code.

The order having been made after judgment, the defendant [11, 12] was entitled to appeal from it (Rev. Codes, sec. 9397), and it is conceded that if, in making it, the court had presumed to modify the judgment, he would have been entitled to complain. Such, however, was not the case. The order did not assume to change the judgment in any respect. The judgment was subject to execution as soon as it was pronounced and entered, both with respect to the imprisonment and the fine. The order was a proper exercise of the power vested in the court by the statute for the execution of the judgment *pro tanto*. Though the appeal from the judgment was taken within four days after it was rendered, its execution was not stayed until the defendant had filed with the clerk a certificate of the judge or of a justice of this court, that in his opinion there was probable cause for the appeal. (Rev. Codes, sec. 9403.) On November 24, more than thirty days after the judgment was pronounced and entered, a certificate of probable cause was granted by one of the justices of this court, which operated as a stay until the appeal should be determined. Until this occurred, it was the duty of the district court to proceed with its execution. There was therefore no

error committed by it in taking the action it did.   The contention of counsel is without merit.   The petition is denied.

Associate Justices Reynolds, Cooper, Holloway and Galen concur.

